**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Glenn Edward MAHER,
Defendant-Appellant.**

No. 80–1157.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1981.

Decided May 18, 1981.

Rehearing and Rehearing En Banc
Denied July 22, 1981.

Pat Hayden, Seattle, Wash., for defendant-appellant.

Curtis James Frush, Asst. U. S. Atty., Seattle, Wash., argued, for plaintiff-appellee; Ken Parker, Asst. U. S. Atty., Seattle, Wash., on brief.

Before BROWNING, Chief Judge, TANG, Circuit Judge and HEMPHILL,* District Judge.

PER CURIAM:

This appeal is from Maher's conviction of conspiracy and possession of 1,200 pounds of marijuana with intent to distribute. We affirm.

Appellant first challenges the sufficiency of the affidavit in support of the search warrant. He contends the key information—that there was marijuana in the truck searched—was a conclusion unsupported by the averments in the affidavit. Although the affidavit does not disclose the underlying circumstances from which the informant, a constable of the Royal Canadian Mounted Police, concluded the truck contained marijuana, the search warrant was nevertheless valid. There appears sufficient independent corroboration of the thorough information provided the officers and "sufficient detail whereby the Judge could 'know that he is relying on something·more substantial than a casual rumor.'" *United States v. Toral*, 536 F.2d 893, 895 (9th Cir. 1976), quoting *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969).

The affidavit, containing sixteen (16) paragraphs set forth on three (3) pages, cited information received from the Canadian constable that "a brown, 1979, GMC truck with an Okanagan camper, bearing B.C. License plate # 8284FE was currently at a local motel near the Black Angus Restaurant in Bellingham, Washington [containing] approximately, 1000 pounds of marijuana". The affidavit further explained that a Treasury Department computer check disclosed that a vehicle bearing that license number had entered the United States from Canada earlier on that date. DEA agents corroborated this information by locating a vehicle matching that description and bearing that tag number at the Pony Soldier Motel in Bellingham. This confirmation was set forth in the affidavit.

The affidavit further disclosed that, after DEA agents had established surveillance of the truck and a companion BMW automobile, they observed "[b]y the way the two vehicles were being operated it appeared as if the operaters (sic) of the vehicles were attempting to detect surveillance." The circuitous paths taken by the vehicles and the suspicious conduct of the drivers, one of whom was appellant Maher, is set forth in

* Honorable Robert W. Hemphill, Senior United States District Judge for the District of South Carolina, sitting by designation.

painstaking detail by the affiant. A further passage from the affidavit provides:

Constable Woods told the agents that the Royal Canadian Mounted Police had received information that the survelliance (sic) conducted by the Drug Enforcement Administration which has been described above had been detected and that the smuggling venture was terminated. Constable Woods also told the agents that the driver of the BMW has abandoned the BMW at an unknown location and that the driver had hitchhiked approximately 10 miles East of Bellingham to Deming, Washington. Constable Woods stated that the driver of the BMW was waiting to be picked up by some of his confederates in Deming. Constable Woods said the driver of the BMW would be at the only Texaco gas station in Deming. Woods also identified the person who would be waiting in the Texaco gas station as Glen (sic) Edward Maher, a person known to the RCMP as a marijuana trafficker and smuggling (sic). The RCMP have been investigating Glen (sic) Edward Maher for several months.

This information was also fully corroborated by the DEA agents, and Maher was thereupon arrested.

The independent corroboration of the information supplied by Constable Woods of the Royal Canadian Mounted Police, which was so sufficiently detailed as to make it inherently reliable, see United States v. Toral, supra at 895, justified the issuance of the search warrant. United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965) teaches that we must examine affidavits for search warrants in a "commonsense and realistic fashion." In so doing we find probable cause to search the truck sufficiently apparent. United States v. Larkin, 510 F.2d 13 (9th Cir. 1974) is inapposite because the informant in this case is reliable and his information dependable, whereas in Larkin neither element was present. Furthermore, the corroborating observations of the DEA agents in the case at bar were not mere "innocuous details" but rather "were themselves suspicious." United States v. Larkin, supra at

15, citing United States v. Archuleta, 446 F.2d 518 (9th Cir. 1971); see also Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

Appellant also attacks the affidavit because it omitted the fact that Canadian Police incorrectly named a different motel, the "Colony", in directing the DEA agents to the location of the truck, which was actually found at the Pony Soldier Motel. This contention is without merit. The record indicates that there was no Colony Motel in Bellingham, but the agent testified he easily located the truck by following the street directions given by the Canadian police. This single inconsequential omission is an insufficient ground for invalidating the warrant. Even a deliberate falsehood must be material in order to justify invalidating a warrant. United States v. Young Buffalo, 591 F.2d 506, 510 (9th Cir. 1979), cert. denied, 441 U.S. 950, 99 S.Ct. 2178, 60 L.Ed.2d 1055 (1979), citing Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The omission charged here is clearly immaterial. Nor has appellant established "perjury or reckless disregard" in the conduct of the officers, Young Buffalo, supra at 509, which would discredit the affidavit.

The final assault on the validity of the search is appellant's contention that an unlawful wiretap was possibly utilized by Canadian police to gain certain of the information passed on to the DEA agents and which formed the basis for the affidavit, thus tainting the search. Canadian police denied to the DEA agents any illegality in obtaining the information and the actual use of a wiretap was not conclusively established, but the Court below presumed the existence of a Canadian wiretap and that it was unlawful for purposes of the suppression hearing. The motion to suppress the marijuana on this ground was denied. That ruling was correct.

Neither our Fourth Amendment nor the judicially created exclusionary rule applies to acts of foreign officials. United States v. Rose, 570 F.2d 1358, 1361 (9th Cir.

1978); *Stonehill v. United States*, 405 F.2d 738, 743 (9th Cir. 1968), *cert. denied*, 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969). There is no evidence American officials participated in the alleged wiretap, nor is it shown that Canadian police were acting as agents for their American counterparts in conducting the purported eavesdropping. The investigation of Maher was initiated and controlled by Canadian police, with only limited support and assistance from American officials on this side of the border. Accordingly, the "joint venture" exception to this general rule of inapplicability to foreign officials as stated in *Rose* and *Stonehill* is not invoked.

Nor is this "a case where federal officials had induced foreign police to engage in conduct that shocked the conscience" to warrant the district court in exercising its supervisory powers to exclude the evidence. *See Birdsell v. United States*, 346 F.2d 775, 782 at n. 10 (5th Cir. 1965), *cert. denied*, 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366 (1965); *United States v. Rose, supra* at 1362. No inducement by federal officials has been shown. The purpose of the exclusionary rule is "to force United States officers to abide by the Fourth Amendment". *Stonehill v. United States, supra* at 743, citing *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). That purpose would not be served by excluding the evidence in this case on the basis of the purported unlawful conduct of the foreign officials.

■ Maher, at the time of his arrest, made certain statements in which he denied owning a BMW. His counsel was notified of these statements but no pretrial motion to suppress was filed. At trial the Government offered testimony about appellant's statements. No objection was taken by the defense, and the voluntariness of these statements was not put in issue on cross examination. The following day Maher's trial counsel asked the court to determine whether these statements were voluntary under 18 U.S.C. § 3501, which provides in pertinent part:

> Before such confession is received into evidence, the trial judge shall, out of the presence of the jury, determine *any issue as to voluntariness*. (emphasis supplied)

There being no issue raised as to the voluntariness of the statements except and until this untimely motion,[1] the trial court committed no reversible error by refusing to hold a voluntariness hearing. *Cf.: Jacobson v. People of State of California*, 431 F.2d 1017 (9th Cir. 1970) [only where a defendant objects to the admission of a confession on involuntariness grounds or where there is evidence in the record tending to show such involuntariness, need a *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) hearing be held]; *United States v. Stevens*, 445 F.2d 304 (6th Cir. 1971), *cert. denied*, 404 U.S. 945, 92 S.Ct. 298, 30 L.Ed.2d 260 (1971) [hearing required only if issue of voluntariness is raised]. Because there was no evidence before the jury on the voluntariness issue, the trial court also properly refused to instruct on this issue. *See United States v. Cowden*, 545 F.2d 257 (1st Cir. 1976) *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977); *United States v. Lewis*, 565 F.2d 1248 (2d Cir. 1977) *cert. denied*, 435 U.S. 973, 98 S.Ct. 1618, 56 L.Ed.2d 66 (1978).

■ Appellant's last contention assigns error to the admission of opinion testimony from DEA agents that Maher's activities were similar to the *modus operandi* of persons conducting countersurveillance while transporting drugs. The trial court, prior to hearing the testimony, ruled that the evidence was admissible lay opinion. Appellant's trial counsel made no request for a preliminary determination by the court concerning the witnesses' qualifications as experts, *see* Rule 104(a) of the Federal Rules of Evidence, apparently in view of the pre-

---

1. The voluntariness issue should have been raised before the statements were received in evidence. Moreover, Rule 12(b)(3), Federal Rules of Criminal Procedure, requires that a motion to suppress be made before trial. The record discloses Maher moved, at the close of trial, to suppress the statements as involuntary. *See United States v. Wood*, 550 F.2d 435 (9th Cir. 1976).

vious ruling. The foundation for this testimony was an extensive and detailed explanation by one of the DEA agents regarding his experience with surveillance and countersurveillance techniques in narcotics operations. We think the witness was qualified to give an expert opinion on *modus operandi* in view of his training and experience.[2] *Cf. United States v. Jackson,* 425 F.2d 574, 577 (D.C.Cir.1970) [experienced police officer "fully conversant with the techniques employed" by pickpockets was qualified as an expert on *modus operandi* of pickpockets]. Since the testimony was admissible expert opinion, any alleged error committed by the trial judge in admitting the evidence under the lay opinion rule was harmless.

JUDGMENT AFFIRMED.

### ORDER
The motion for remand is denied.

---

**2.** Pursuant to Rule 702 of the Federal Rules of Evidence a witness may be "qualified as an expert by knowledge, skill, experience, training, or education".