**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William Stanley STEWART, a/k/a Stanislaus W. White, Defendant-Appellant.**

**No. 84–1111.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 1985.

Decided Sept. 4, 1985.

D. Michael Nerney, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Alan M. Caplan, Bushnell, Caplan, Fielding & Rudy, San Francisco, Cal., for defendant-appellant.

Before CHOY, TANG, and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Stewart appeals his conviction for distribution and conspiracy to distribute LSD, and possession with intent to distribute and conspiracy to distribute cocaine. We affirm the conviction, but remand for resentencing.

## I. FACTS

In September and October 1982, DEA agent Robert Fanter purchased large quantities of LSD from Michael North on three separate occasions. During each transaction, North referred to obtaining drugs from a "friend" or to going home to give his "friend" the money Fanter paid for the drugs.

DEA agents kept North under surveillance before, during, and after each transaction. They saw Stewart arrive at North's home immediately prior to each of the three transactions, and, on two of those occasions, North called Fanter to say that his friend had arrived.

After the second transaction on October 15, Stewart was waiting at North's home when North returned. Stewart left the house a short time later, and, for the next nine hours he drove around the Santa Cruz area, stopping several times at public phones and private residences. The DEA agents conducting surveillance concluded that Stewart was making drug deliveries to customers.

The last transaction took place on October 26. North went to Fanter's hotel but he brought with him only half of the 60,000 doses of LSD he was to deliver. He said that he would deliver the remainder after he took the first half of the purchase price to his friend. Fanter and another DEA agent arrested North at the hotel.

Stewart had been seen arriving at North's house shortly before North left to meet Fanter. After North left, Stewart drove to a hardware store parking lot, used a pay phone, drove into a residential neighborhood, and then returned to the same parking lot. By this time, the surveilling officers had learned that North had delivered only one-half of the LSD. They arrested Stewart in the parking lot, and searched his pickup truck. Inside a briefcase in the cab of the truck, they found 25.37 grams of 83% pure cocaine and a quantity of glucose. The officers did not find any LSD in the search.

Stewart originally was indicted under a false name, Stanislaus William White, which he gave officers at the time of his arrest. After plea negotiations broke down, the government sought and received a superseding indictment against Stewart in his true name. In addition to the LSD counts, it charged Stewart with possession with intent to distribute cocaine and charged both Stewart and North with conspiracy to distribute cocaine.

Stewart and North were tried together. The jury convicted North but could not reach a verdict as to Stewart. Stewart was retried, convicted on all counts, and sentenced to twenty-five years imprisonment (North had been sentenced to three and one-half years). Stewart timely appealed.

## II. DISCUSSION

### A. Search of Stewart's Truck

 Stewart contends the district court erred in denying his motion to suppress the cocaine found in the warrantless search of his truck. Applying de novo review to the

district court's determination of probable cause, *see United States v. Salvador,* 740 F.2d 752, 757–58 n. 4 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 978, 83 L.Ed.2d 980 (1985), we disagree.

In *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court held that if probable cause exists to search an entire vehicle, rather than merely a particular container in the vehicle, the search may extend to the entire vehicle and every container inside it that could conceal the object of the search. *Id.* at 823–24, 102 S.Ct. at 2172; *see United States v. Johns,* —— U.S. ——, 105 S.Ct. 881, 883, 83 L.Ed.2d 890 (1985); *United States v. Jacobs,* 715 F.2d 1343, 1346 (9th Cir.1983).

On the evening of the 26th, the agents knew that North had delivered only one-half of the drugs and had said that he would deliver the remainder after he gave the money to his friend. The officers also knew of Stewart's close connection with the earlier transactions, and that night they observed Stewart's somewhat erratic driving, and his two stops to make phone calls. From this information, the agents reasonably could have inferred that North and Stewart had arranged to get in touch and exchange the remainder of the drugs for the money. We conclude that the agents had probable cause to believe that Stewart was carrying the drugs in his truck. *See United States v. Azhocar,* 581 F.2d 735, 736–37 (9th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979); *United States v. Abascal,* 564 F.2d 821, 828–29 (9th Cir.1977), *cert. denied,* 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978).

■ We further conclude that probable cause extended to the entire truck. The agents had no way of knowing where in Stewart's truck the drugs might be found.

They had seen Stewart leave North's home earlier that evening carrying the briefcase in which the cocaine was found, but they did not have any specific information or reason to believe that the LSD would be in the briefcase.[1] The LSD might have been hidden anywhere in the truck, so the search permissibly could extend to containers within the truck. *See United States v. Johns,* 105 S.Ct. at 884.

### B. Vindictive Prosecution

Stewart contends the government's conduct in seeking the superseding indictment, which added the cocaine charges, constituted vindictive prosecution. He argues that the government sought the new indictment because he refused to accept a plea bargain.[2]

■ Bringing additional charges because a defendant is not willing to plea bargain constitutes permissible prosecutorial discretion. *See Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978); *United States v. Heldt,* 745 F.2d 1275, 1280 (9th Cir.1984); *United States v. Allsup,* 573 F.2d 1141, 1143 (9th Cir.), *cert. denied,* 436 U.S. 961, 98 S.Ct. 3081, 57 L.Ed.2d 1128 (1978). Stewart was "free to accept or reject the prosecution's offer." *Bordenkircher v. Hayes,* 434 U.S. at 363, 98 S.Ct. at 668. Even assuming the government did seek the superseding indictment in retaliation for Stewart's refusal to plead guilty, that alone is insufficient to establish vindictive prosecution. *United States v. Heldt,* 745 F.2d at 1280.

### C. Exclusion of Paraphernalia Found In North's House

■ Stewart contends he should have been permitted to introduce in evidence several items seized from co-defendant

---

**1.** The absence of any specific information about the briefcase sets this case apart from the "container" search cases, *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), upon which Stewart relies.

**2.** It is unclear whether we are to review the district court's refusal to dismiss for vindictive prosecution under the abuse of discretion standard or the clearly erroneous standard. *See United States v. Gann,* 732 F.2d 714, 724 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 505, 83 L.Ed.2d 397 (1984). Under either standard, however, we reject Stewart's contention.

North's house: a bag of marijuana; a marijuana plant; books on drug growth and production; psychedelic mushrooms; a bag containing funnels and a white powder residue; a cocaine spoon and mirror; and a scale. He offered these items to show that North was a supplier of narcotics, "which ... may have suggested to the jury that North himself was the sole operative in the alleged drug enterprise, rather than merely being an agent of [Stewart]."

The district court refused to admit this evidence on the basis that it was not probative, involved a collateral matter, and would tend to confuse the jury. We review this ruling for an abuse of discretion. *United States v. McClintock*, 748 F.2d 1278, 1291 (9th Cir.1984); *United States v. Booth*, 669 F.2d 1231, 1239 (9th Cir.1981).

We recognize that "[a] defendant is entitled to prove his innocence by showing that someone else committed the crime," *United States v. Brannon*, 616 F.2d 413, 418 (9th Cir.), *cert. denied*, 447 U.S. 908, 100 S.Ct. 2993, 64 L.Ed.2d 858 (1980); *accord Perry v. Rushen*, 713 F.2d 1447, 1454 (9th Cir.1983), *cert. denied*, — U.S. —, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984), and we have reversed convictions for exclusion of such exculpatory evidence, *see, e.g., United States v. Crenshaw*, 698 F.2d 1060, 1064–66 (9th Cir.1983) (exclusion of photographs of person who defendant contended committed bank robbery); *United States v. Armstrong*, 621 F.2d 951, 953 (9th Cir. 1980) (exclusion of evidence that another person, matching description of bank robber, had used bait money taken in robbery).

The difficulty here is that the evidence Stewart sought to introduce was only slightly relevant, if at all, and was clearly collateral to the central issues of the trial. Fed.R.Evid. 403. The paraphernalia might have tended to show that North was a drug distributor, but it did not show that Stewart was *not* a distributor. Although it may have been preferable to admit the evidence, we cannot say that the district court abused its discretion by excluding it.[3]

### D. North's Hearsay Statements

Stewart contends North's statements about his "friend" or source should have been excluded under Fed.R.Evid. 801(d)(2)(E), because the government did not produce sufficient evidence to establish a conspiracy and Stewart's connection to it.

■ To introduce co-conspirator statements under Rule 801(d)(2)(E), the government must show substantial independent evidence of the existence of a conspiracy and slight evidence of the defendant's connection with the conspiracy. *United States v. Fleishman*, 684 F.2d 1329, 1338 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). The hearsay statements themselves cannot be considered in determining whether the requirements of the rule have been met. *United States v. Perez*, 658 F.2d 654, 658–59 (9th Cir.1981); *United States v. Batimana*, 623 F.2d 1366, 1368 (9th Cir.), *cert. denied*, 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980). We review the evidence and inferences that can be drawn from it in a light

3. The slight probative value of the evidence Stewart offered also distinguishes this case from *United States v. Morgan*, 581 F.2d 933 (D.C.Cir. 1978), upon which Stewart relies. In that case, Morgan was arrested at a house he was visiting, and officers found in his possession a small quantity of phenmetrazine pills. The officers also found a large quantity of pills and cash hidden in the basement of the house. Morgan was charged with possession with intent to distribute, and at trial the government sought to establish that Morgan had dominion and control of the pills found in the basement. Morgan sought to introduce evidence from a police informant that he purchased pills at the house from a man named "Timmy" and other evidence that the son of the woman who owned the house was named "Timmy" and was known to sell drugs. The court held that exclusion of this evidence was reversible error. *Id.* at 939.

The evidence in *Morgan* was offered for the purpose of showing that someone else possessed the large quantity of pills and would have raised a strong inference that Morgan did not possess them. Other than the large quantity of pills, there was no evidence upon which to base the intent to distribute charge. The inferences that Stewart suggests could have been drawn from the evidence he offered were much more tenuous, and the exculpatory effect of the evidence was much less strong.

most favorable to the government. *United States v. Bell,* 742 F.2d 509, 512 (9th Cir. 1984).[4]

■ We conclude that the requirements of Rule 801(d)(2)(E) were met here. Stewart was present at North's house immediately prior to all three transactions. Stewart and North met immediately after two of the transactions. And, perhaps most important, Stewart's palm print was found on the envelope that contained the LSD North delivered to Fanter. This evidence is adequate to show a conspiracy and Stewart's connection to it. *See United States v. Federico,* 658 F.2d 1337, 1344 (9th Cir. 1981), *overruled on other grounds, United States v. DeBright,* 730 F.2d 1255, 1259 (9th Cir.1984) (en banc); *United States v. Mason,* 658 F.2d 1263 (9th Cir.1981).

### E. Agents' Opinions of Stewart's Driving Behavior

■ Stewart argues that the DEA agents should not have been allowed to testify as to their opinions that he was attempting to avoid surveillance as he drove through Santa Cruz on the night of October 26, and that he probably was delivering drugs to customers on October 15. He argues that this is not a proper subject for expert testimony under Fed.R.Evid. 702.

In *United States v. Maher,* 645 F.2d 780 (9th Cir.1981) (per curiam), we upheld admission of DEA agents' opinion testimony that the defendant's activities were similar to the *modus operandi* of persons conducting counter-surveillance while transporting drugs. *Id.* at 783–84. Other cases are similar. *See, e.g., United States v. Fleishman,* 684 F.2d at 1335 (testimony that one defendant was acting as a lookout); *United States v. Daniels,* 723 F.2d 31, 32–33 (8th Cir.1983) (testimony that it is common for drug traffickers to register cars and apartments in names of third persons); *United*

*States v. Carson,* 702 F.2d 351, 369–70 (2d Cir.) (testimony that transaction on street corner appeared to be drug sale), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983).

The trial court's admission of the agents' opinions was not manifestly erroneous. *See United States v. Gann,* 732 F.2d 714, 724 (9th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 505, 83 L.Ed.2d 397 (1984).

### F. Entrapment Instruction

■ Stewart argues that the trial court erred in failing to give an entrapment instruction.

In this circuit, we do not recognize the theory of derivative entrapment. *United States v. North,* 746 F.2d 627, 630 (9th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1773, 84 L.Ed.2d 832 (1985); *United States v. Lomas,* 706 F.2d 886, 891 (9th Cir.1983); *United States v. Shapiro,* 669 F.2d 593, 597–98 (9th Cir.1982). Because Stewart never had contact with a federal agent, he cannot claim entrapment, and the district court's failure to give an entrapment instruction was proper.

### G. Sufficiency of the Evidence

Stewart challenges the sufficiency of the evidence to convict. On sufficiency claims, we view the evidence in a light most favorable to the government and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Ospina,* 739 F.2d 448, 450 (9th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 262, 83 L.Ed.2d 198 (1984).

■ On the LSD charges, a reasonable jury could have found guilt based on North's statements, Stewart's meetings with North, Stewart's palm print on the envelope, and his apparent attempts to

---

**4.** It is not entirely clear what standard of review applies to admission of co-conspirator statements under Rule 801(d)(2)(E). *See United States v. Layton,* 720 F.2d 548, 556 & n. 4 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984). Since we would affirm the district court's ruling here applying de novo review, we need not consider whether some other, more deferential standard is appropriate.

avoid surveillance. *See, e.g., United States v. Fleishman,* 684 F.2d at 1341; *United States v. Mason,* 658 F.2d at 1270; *United States v. Federico,* 658 F.2d at 1343–44; *United States v. Haro-Espinosa,* 619 F.2d 789, 794 (9th Cir.1979); *United States v. Vargas-Rios,* 607 F.2d 831, 834–35 (9th Cir. 1979); *United States v. Padilla,* 525 F.2d 308, 310–11 (9th Cir.1975).

■■■ On the cocaine charges, Stewart argues that the amount of cocaine found in his briefcase, approximately one ounce, is too little to show an intent to distribute. However, the government's expert testified that it would be "very unusual" for a person to possess an ounce of cocaine for personal use. Additionally, the cocaine was 80% pure, and it was found with a bag of glucose, a common dilutant. This was sufficient evidence to support an inference of an intent to distribute. *See United States v. Ramirez-Rodriguez,* 552 F.2d 883, 884–85 (9th Cir.1977) (per curiam) (possession of 13.74 grams of 30% pure cocaine, found with substance commonly used to cut cocaine).

■■■ A reasonable jury also could have concluded that North and Stewart conspired to distribute cocaine, based on testimony that during one of the drug sales, North gave a sample of cocaine to Fanter and said that his source could get more. This statement, plus the other evidence showing that Stewart was North's source of LSD, provides the connection between North and Stewart sufficient to establish a conspiracy.

*H. Sentencing*

Stewart raises a number of challenges to the sentence he received and the way it was imposed. We agree that errors in the sentencing process require remand.

■■■ In his sentencing hearing, and again on appeal, Stewart challenged much of the information contained in the presentence report prepared about him. The report stated that Stewart had been arrested on drug charges in Canada in 1975 and that he had attempted to run down a Canadian police officer with his car. The government asserted that Stewart had run an extensive drug manufacturing operation in Canada prior to coming to the United States.

A defendant challenging information used in sentencing must show that it " 'is (1) false or unreliable, and (2) demonstrably made the basis for the sentence.' " *United States v. Ibarra,* 737 F.2d 825, 827 (9th Cir.1984) (quoting *Farrow v. United States,* 580 F.2d 1339, 1359 (9th Cir.1978) (en banc) ).

In *Ibarra,* we held that new Fed.R. Crim.P. 32(c)(3)(D) implements this standard. 737 F.2d at 827. The rule requires that when a defendant challenges information in a presentence report, the district court must make a finding concerning the challenged information or state that no such finding is necessary because the court will not rely on the information. Fed.R. Crim.P. 32(c)(3)(D). In *Ibarra,* we held that the trial court had "substantially complied" with the rule and the defendant had failed to show that "the court 'demonstrably' relied on the challenged information when it imposed sentence." 737 F.2d at 827.

The record in this case does not show any "substantial compliance" with the rule. The district court said nothing about Stewart's assertions that the information in the presentence report was false, nor did the court say that it would not consider the challenged information. This information was extremely prejudicial to Stewart. Without the findings required under Rule 32(c)(3)(D), we cannot know whether the district court relied on the disputed information in imposing sentence. Accordingly, we must remand for resentencing. *See United States v. Donn,* 661 F.2d 820, 825 n. 4 (9th Cir.1981) (defendant does not have burden of showing demonstrable reliance when there is no record of what factors the sentencing court relied upon); *see also United States v. Velasquez,* 748 F.2d 972, 973–74 (5th Cir.1984).

 Stewart also contends the record is ambiguous with respect to the term of imprisonment the district court imposed. The court imposed five-year sentences on counts one, two, three, and six of the indictment, and ten-year sentences on counts five and seven. The court announced the relationship of the sentences as follows:

[T]he five year sentences as to counts 2, 3, and 6 are to run concurrent with the five years as to count 1. Count 1 is to run consecutive to count 5. Counts 1 and 5 are to run consecutive *to Count 6* for a total as to all counts of 25 years. It is so ordered.

(Emphasis added). The ambiguity arises because of the emphasized language. It appears the court meant to refer to count seven rather than count six, otherwise the sentence does not total twenty-five years, and there is no explanation of how count seven relates to the other counts. Contrary to the government's assertion, this ambiguity is not cleared up by the court's written commitment order; instead, the same (apparent) mistake appears there too. On remand, the trial court should address this ambiguity. *See* Fed.R.Crim.P. 36.

 Finally, Stewart contends the district court erred under *United States v. Capriola*, 537 F.2d 319 (9th Cir.1976), in failing to state reasons for the disparity between his sentence (twenty-five years) and North's sentence (three and one-half years). *Capriola* held that if one defendant stands trial and receives a greater sentence than a codefendant who pleaded guilty, the sentencing judge must explain the disparity on the record. This rule is intended to preserve the appearance of judicial integrity and to make clear that the second defendant was not penalized for exercising his right to stand trial. *Id.* at 321. The *Capriola* rule does not apply here, however, because Stewart and North both stood trial, and thus, the concern that a defendant has been punished for exercising his right to a jury trial is not present. *See United States v. Garrett*, 680 F.2d 650, 652 (9th Cir.1982); *United States v. Thompson*, 541 F.2d 794, 796 n. 1 (9th Cir.1976).

Although *Capriola* does not mandate an explanation of the disparity in North's and Stewart's sentences, Stewart is correct that without an explanation it is difficult to assess the reasons for the marked disparity (Stewart's sentence is seven times greater than North's.) An explanation on the record would be helpful to the reviewing court and adequate reasons would dispel the appearance of unfairness.

### III. CONCLUSION

We affirm Stewart's conviction, vacate his sentence, and remand for further proceedings consistent with this opinion.