UNITED STATES of America, Appellee,

v.

Eugenia GONZALEZ, Defendant–Appellant.

No. 410, Docket 87–1356.

United States Court of Appeals, Second Circuit.

Argued Nov. 17, 1987.

Decided Dec. 17, 1987.

Michael A. Battle, Asst. U.S. Atty., Buffalo, N.Y. (Roger P. Williams, U.S. Atty., W.D.N.Y., Stephan J. Baczynski, Asst. U.S. Atty., Buffalo, N.Y., on the brief), for appellee.

James P. Harrington, Buffalo, N.Y., for defendant-appellant.

Before LUMBARD, TIMBERS, and KEARSE, Circuit Judges.

PER CURIAM:

Defendant Eugenia Gonzalez appeals from a judgment entered after her conditional plea of guilty in the United States District Court for the Western District of New York, John T. Elfvin, *Judge*, convicting her of possession of cocaine with intent to distribute, in violation of 21 U.S.C.

§ 841(a)(1) and 18 U.S.C. § 2 (1982). Gonzalez was sentenced to three years' imprisonment and assessed a special $50 fine; execution of the prison term was suspended, and she was placed on probation for five years. Having properly reserved the right to appeal the district court's denial of her motion to suppress (1) cocaine seized from her person, and (2) her post-arrest statements, Gonzalez argues that both items of evidence should have been suppressed on the ground that they were obtained pursuant to an arrest made without probable cause. For the reasons below, we affirm.

The evidence presented at the hearing on Gonzalez's suppression motion, taken in the light most favorable to the government, revealed the following. On January 2, 1986, Constable John Wheelihan of the Royal Canadian Mounted Police ("RCMP") in Hamilton, Ontario, received a telephone tip from an informant. The informant told Wheelihan that James West, a resident of Hamilton, would travel to an airport the following evening to meet a woman arriving on a flight from Miami, Florida, carrying a quantity of high grade cocaine for delivery to West. The informant described the woman as fairly young, attractive, light-skinned, and of Hispanic origin. Wheelihan had known the informant since April 1983. Throughout their acquaintance, the informant had consistently supplied reliable evidence, and his tips had twice led to convictions of narcotics and weapons offenses.

In response to this tip, the RCMP commenced surveillance of West, whose name and address were already in RCMP files. On January 3, when it began to appear that West was going to enter the United States, the Canadian officials sought and obtained the cooperation of American law enforcement officers. West was followed to the Buffalo International Airport near Buffalo, New York. At 9:30 that evening, he went to an arrival gate where he met a light-skinned Hispanic woman later identified as Gonzalez who, accompanied by her two-and-a-half-year-old daughter, had just arrived on an Eastern Airlines flight from Miami.

The American and Canadian officers decided to follow West and Gonzalez, and to confront them if they stopped in the United States, but otherwise to allow them to proceed to the Canadian border where they would be searched by border police. When West and Gonzalez stopped in a hotel parking lot before reaching the Canadian border, four law enforcement vehicles surrounded their car, effectively immobilizing it. One agent approached the car on the driver's side, with revolver drawn. He reached in and turned off the motor, ordered West to get out, and frisked him. Another officer read Gonzalez her *Miranda* warnings and requested identification, advising her that she was suspected of carrying cocaine. The officers searched her purse and, with her consent, her luggage. At some point they noticed a bulge in her clothing. She was again read *Miranda* warnings. With Gonzalez's consent, a female police officer searched her and found a package of cocaine taped to her chest. Gonzalez was given *Miranda* warnings a third time, questioned, and formally placed under arrest at about 11:15 p.m. Thereafter, Gonzalez made statements that incriminated both West and herself.

The district court denied Gonzalez's motion to suppress the cocaine and the statements. Though it found that the "arrests occurred when the vehicle was enclosed by police vehicles and West at gunpoint was ousted from his car and frisked and Gonzalez's purse was seized and searched and she was told to exit the vehicle and its near spaces searched for weapons," the court found that the information given to the RCMP by the confidential informant and confirmed by the officers' own observations sufficed to give them probable cause to make the arrests. We conclude that this ruling was justified by *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959), as reaffirmed by *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable

caution in the belief that an offense has been committed by the person to be arrested. *E.g., Dunaway v. New York*, 442 U.S. 200, 208 & n. 9, 99 S.Ct. 2248, 2254 & n. 9, 60 L.Ed.2d 824 (1979); *Draper v. United States*, 358 U.S. at 313, 79 S.Ct. at 333; *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). In *Draper*, an informant, who had given a federal narcotics agent accurate information from time to time over a period of six months, gave the agent Draper's address in Denver, and told him that Draper was selling drugs; he stated that Draper had left for Chicago the previous day to bring back three ounces of heroin and would return by train on one of the next two mornings. The informant gave a detailed description of Draper and the clothing he was wearing, and said that he would be carrying a tan zippered bag and that he habitually walked very fast. On the second morning after receiving the tip, agents arrested Draper, who matched the physical, clothing, and baggage descriptions given by the informant, after Draper disembarked from a train from Chicago and started to walk very quickly toward an exit. In affirming a ruling that the agents had probable cause for the arrest, the Supreme Court emphasized that the informant's past information had always been found accurate and reliable and that the law enforcement agents had independently verified virtually all of the informant's tips. The Court concluded that "with every other bit of [the informant's] information being thus personally verified," the agents had probable cause and reasonable grounds "to believe that the remaining unverified bit of ... information—that Draper would have the heroin with him—was likewise true." *Id.* at 313, 79 S.Ct. at 333.

*Draper* was specifically reaffirmed in *Illinois v. Gates*, which held that the existence of probable cause must be determined on the basis of the totality of the circumstances. While *Gates* involved a magistrate's decision that an informant's tip, where many details of the tip had been corroborated by police investigation, provided probable cause to issue a search warrant, the *Gates* Court endorsed *Draper* as "the classic case on the value of corroborative efforts of police officials." 462 U.S. at 242, 103 S.Ct. at 2334; *see id.* at 241–45, 103 S.Ct. at 2333–36.

The present case is not meaningfully distinguishable from *Draper*. The informant here was known to a member of the RCMP and had proven his reliability over a period of nearly three years; two of his tips had resulted in arrests and convictions for narcotics and weapons offenses. Though West had no prior record of narcotics convictions, his name and address were already in RCMP files. Each of the preliminary details provided by the informant was verified by the law enforcement agents: West went to the airport on the date predicted, he did so in the evening, he met a woman, the woman arrived on a flight from Miami, and she met the description provided by the informant. In addition, "Florida is well known as a source of narcotics and other illegal drugs." *Illinois v. Gates*, 462 U.S. at 243, 103 S.Ct. at 2335. The agents were thus warranted in believing that the final detail—that Gonzalez would be carrying cocaine—was also true. We conclude that the district court did not err in ruling that the agents had probable cause for the arrest.

The judgment of conviction is affirmed.