**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Serge LaCHAPELLE; Elmer Dale
Osborne, Defendants–Appellants.**

Nos. 88–3129, 88–3151.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1989.

Decided March 6, 1989.

Kenneth R. Olson, Baiz & Olson, Great Falls, Mont. and Nicholas M. Matassini, Tampa, Fla., for defendants-appellants.

Robert L. Zimmerman, Asst. U.S. Atty., Billings, Mont., for plaintiff-appellee.

Before HUG, NORRIS and THOMPSON, Circuit Judges.

HUG, Circuit Judge:

Having each entered a conditional plea of guilty to the charge of conspiracy to possess cocaine with intent to distribute, Serge LaChapelle and Elmer Dale Osborne appeal the district court's denial of their suppression motions. We conclude that the district court correctly denied the suppression motions and therefore affirm the convictions

---

of both men. We also find meritless La-Chapelle's challenge to his sentence.

## FACTS

On December 16, 1987, Constable Beaton of the Royal Canadian Mounted Police ("RCMP") contacted the Drug Enforcement Administration ("DEA") in Great Falls, Montana, to inform them of a drug transaction that Canadian authorities had reason to believe would take place in the United States. Constable Beaton told DEA Agent Barnes, the agent in charge of the Great Falls office, that Canadian electronic surveillance had uncovered the information that Serge LaChapelle, a Canadian citizen, would soon be traveling to the United States to procure cocaine. Several subsequent calls from Beaton informed Agent Barnes that LaChapelle apparently intended to meet an unnamed drug courier at the Great Falls airport on December 23, 1987. The courier was scheduled to arrive on a 10:30 p.m. flight. Constable Beaton called Barnes a final time on December 23 at approximately 4:45 p.m. to apprise the federal agent that LaChapelle and another individual had just cleared customs and had entered the United States. Descriptions of LaChapelle, his traveling companion, and the car in which they were driving were transmitted to Agent Barnes at that time.

In response to the information obtained from his Canadian sources, Agent Barnes set up a surveillance at the Great Falls airport in order to determine whether LaChapelle indeed met a flight that evening. LaChapelle and his companion, Dale Vayro, arrived at the airport at 9:45 p.m. At 12:35 a.m., the two men met a flight that had been delayed approximately two hours due to inclement weather. Defendant Osborne was on that flight. Osborne, LaChapelle, and Vayro exchanged greetings and then proceeded to the luggage claim area. After Osborne had retrieved his bags, Barnes and various other law enforcement personnel approached the three men, removed them to separate rooms away from the general public, Mirandized them, and searched their persons. The search of Osborne uncovered a quantity of cocaine.

LaChapelle, Osborne, and Vayro were subsequently charged with a variety of offenses arising out of their arrest at the Great Falls airport. Vayro was allowed to plead to a misdemeanor in return for his agreement to testify against LaChapelle and Osborne. LaChapelle and Osborne, in contrast, pled not guilty and filed a number of suppression motions with the district court. After their suppression motions were denied, the two defendants changed their pleas to guilty while preserving their right to appeal the district court's adverse suppression rulings. Both men were then sentenced under the United States Sentencing Commission's Sentencing Guidelines to 33 months in prison followed by three years of supervised release. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1982) and 18 U.S.C. § 3742 (Supp. II 1984).

### Suppression of Canadian Wiretap Evidence

LaChapelle first argues that suppression of all evidence obtained against him through Canadian electronic surveillance is required absent proof that the fourth amendment was not violated in its collection.[1] Generally, "[n]either our Fourth Amendment nor the judicially created exclusionary rule applies to acts of foreign officials." *United States v. Maher*, 645 F.2d 780, 782 (9th Cir.1981) (citations omitted). There are only two very limited exceptions to this general principle. First, " 'if American law enforcement officials participated in the foreign search, or if the foreign authorities actually conducting the search were acting as agents for

---

**1.** LaChapelle also contends on appeal that use of Canadian wiretap information in his prosecution runs afoul of the Montana Constitution. *See* Mont. Const. art. II, § 10 (1972) (right to privacy). His reliance on state law in this context is misplaced. *See United States v. Kovac*, 795 F.2d 1509, 1511–12 (9th Cir.1986) ("[i]t is clear from our precedents that evidence obtained by federal officials ... in violation of state law but in compliance with federal law is admissible" (citations omitted)), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 1000 (1987).

their American counterparts, the exclusionary rule can be invoked.'" *United States v. Rose,* 570 F.2d 1358, 1362 (9th Cir.1978) (quoting *United States v. Morrow,* 537 F.2d 120, 139 (5th Cir.1976), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977)). Second, "if the circumstances of the foreign search and seizure are so extreme that they 'shock the [judicial] conscience,' a federal appellate court in the exercise of its supervisory powers can require exclusion of the evidence." *Id.* (quoting *Birdsell v. United States,* 346 F.2d 775, 782 n. 10 (5th Cir.), *cert. denied,* 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366 (1965)).

The conduct of the Canadian officials in this case does not fall within either of these two exceptions. Constable Beaton, the RCMP official who was in charge of the Canadian investigation of LaChapelle, stated explicitly at the suppression hearing that American agents were not involved in initiating or controlling the contested wiretap. The district court apparently credited his testimony, and we decline to disturb this credibility determination on appeal. *See United States v. Coletta,* 682 F.2d 820, 825 (9th Cir.1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433 (1983). Thus, the evidence belies LaChapelle's assertion that a joint venture between the United States and foreign officials existed sufficient to warrant invocation of the fourth amendment. *Compare Maher,* 645 F.2d at 783 (no joint venture found where American arrest based upon evidence obtained by Canadian wiretap; the investigation of the defendant "was initiated and controlled by Canadian police, with only limited support and assistance from American officials on this side of the border").

Similarly, there is no evidence that the Canadian authorities engaged in activity that "shocks the conscience" during their investigation of LaChapelle. Indeed, Constable Beaton applied for and received authorization from his government to engage in the electronic surveillance that forms the basis of LaChapelle's complaint. Since the Canadian procedures for obtaining such authorization are quite similar to those in force in the United States, *see* Crankshaw's Crim.Code §§ 178.1–178.23 (1979), the Ca-

nadian investigation in all probability complied with the requirements of the fourth amendment. Even if it did not, however, its deviation from American constitutional norms is not so gross as to shock the judicial conscience. *Compare United States v. Cotroni,* 527 F.2d 708, 710–12 & n. 10 (2d Cir.1975) (Canadian electronic surveillance at a time when it was completely unregulated not found to shock the judicial conscience), *cert. denied,* 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976).

Given the lack of any evidence placing the Canadian activity in this case within either of the two exceptions to the general rule that the fourth amendment does not apply to acts of foreign officials, the district court properly concluded that LaChapelle's suppression claim lacked merit.

### *Probable Cause to Arrest*

██ Both LaChapelle and Osborne next argue that the DEA did not possess probable cause to arrest them in the Great Falls airport. The district court disagreed, finding both arrests adequately supported by probable cause. We review this finding independently. *United States v. Klein,* 860 F.2d 1489, 1492 (9th Cir.1988).

"The test for probable cause is whether 'facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, [to believe], in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* at 1493 (quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979)) (other citations omitted). We analyze the "totality of the circumstances" in order to determine whether a particular conclusion that probable cause existed was warranted. *See id.* (citing *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

The totality of the circumstances in this case support the district court's finding of probable cause. First, as a source of information, the RCMP is highly reliable. *See Maher,* 645 F.2d at 782 (RCMP officer is a reliable informant); *United States v. Ti-*

*rinkian,* 502 F.Supp. 620, 626 (D.N.D.1980) (information received from RCMP inherently reliable because of its status as a law enforcement agency). Further, the information supplied by the RCMP was quite detailed and specific and was based on electronic surveillance. Thus, the basis of knowledge upon which the Canadian tip rested was quite strong. *See Tirinkian,* 502 F.Supp. at 627 (knowledge that RCMP based information on intercepted telephone conversations was adequate to show underlying circumstances of how information was obtained). Finally, much of the information that Constable Beaton supplied was independently corroborated by the DEA when LaChapelle in fact met Osborne as predicted at the proper place and time. *See Maher,* 645 F.2d at 782 (independent corroboration of detailed information supplied by RCMP justified issuance of search warrant); *Tirinkian,* 502 F.Supp. at 627 (corroboration of RCMP information by American officials increased its reliability). Although an even stronger case would exist if the corroborating observations of the DEA had themselves been suspicious, *see Maher,* 645 F.2d at 782, we do not find the absence of this circumstance sufficient to warrant a finding that probable cause was lacking. *Compare United States v. Gonzalez,* 835 F.2d 449 (2d Cir.1987) (information regarding suspected drug transaction supplied by RCMP; American surveillance confirmed RCMP information; finding of probable cause upheld despite fact that none of the facts corroborated by American officials were, in themselves, suspicious). Appellants' suppression motions claiming a deficiency in probable cause were thus properly denied.

### Constitutionality of Sentencing Guidelines

LaChapelle's argument that he was unconstitutionally sentenced is foreclosed by the Supreme Court's recent decision in *Mistretta v. United States,* ⸻ U.S. ⸻, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (holding that the Sentencing Guidelines promulgated by the United States Sentencing Commission survive constitutional attack).

AFFIRMED.