UNITED STATES of America,

v.

Luis Jose NOLASCO, Jr., Jose Maria Bautista, Miguel Angel Vargas, a/k/a "Chino," Juan Nunez, a/k/a "Tite," Defendants.

No. 96 Cr. 239 (JGK).

United States District Court,
S.D. New York.

Aug. 23, 1996.

John J. Rice, Assistant United States Attorney, Southern District of New York, New York City, for U.S.

David Goldstein, Goldstein, Weinstein, Fuld, Bronx, for defendants.

*OPINION AND ORDER*

KOELTL, District Judge:

The defendant Juan Nunez, a/k/a "Tite" has been indicted in a two count indictment. Count one charges Mr. Nunez with conspir-

ing to distribute and possess with intent to distribute five kilograms and more of cocaine, in violation of Title 21, U.S.C. § 846. Count two charges Mr. Nunez with possessing with intent to distribute five kilograms and more of cocaine, in violation of Title 21, U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A) and Title 18, U.S.C., § 2.

Mr. Nunez now moves pursuant to Fed. R.Crim.P. 12(b)(3) to suppress all physical evidence seized at the time of his arrest. Mr. Nunez also moves pursuant to Fed. R.Crim.P. 12(b)(3) to suppress any and all statements made by him at the time of his arrest. The Court conducted an evidentiary hearing on the defendant's motion on August 8, 1996.

Mr. Nunez argues, first, that the United States Drug Enforcement Administration (DEA) had no probable cause to arrest him; and second, that he was not properly given *Miranda* warnings subsequent to his arrest.[1] For the reasons that follow, the defendant's motion to suppress is denied.

## I.

After considering all of the evidence, including the credible testimony of Special Agent David Cali and Detective Pedro Colon at the evidentiary hearing, the Court makes the following findings of fact. In February 1996, Special Agent Cali was contacted by a confidential informant ("CI") (Transcript of August 8, 1996 hearing at 21.) Special Agent Cali had worked with this CI since 1992 on various cases, and the CI had always provided him with reliable information. Id. at 21, 22.

The CI advised Special Agent Cali that he had been paged by "Tite," who was later identified as Mr. Nunez, and who offered to sell the CI kilogram quantities of cocaine. Id. at 22. The CI said that he met thereafter with three men—Tite; "Chino," later identified as the defendant Miguel Angel Vargas; and a third man later identified as Jose Marie Bautista—at an auto parts store located at 187th Street and St. Nicholas Avenue in Manhattan. Id. at 22, 23. Tite offered to

show cocaine to the CI. Id. at 23, 24. The CI provided his pager number to Tite and Chino, and Tite provided the telephone number of the auto parts store to the CI. Id. at 23. The CI had a couple of further chance meetings with Tite. Id. at 23, 24.

Thereafter, on the morning of March 21, 1996, the CI informed Special Agent Cali that he had received a telephone call from Tite from the auto parts store. Id. at 24. The CI told Special Agent Cali that Tite had told the CI that he had received a shipment of cocaine and asked if the CI was interested in buying some. Id. Special Agent Cali then instructed the CI to call Tite and make arrangements to buy cocaine. Id. With Special Agent Cali recording and listening in on the conversation, the CI telephoned Tite. Id. at 24, 25. Special Agent Cali was unable to understand the substance of the conversation because it was conducted in Spanish. Id. at 25. After the conversation, the CI told Special Agent Cali that he had spoken to Tite and Chino about the cocaine and that he had arranged a meeting. Id. at 25. Special Agent Cali never received or reviewed a transcript of this conversation prior to Mr. Nunez's arrest. Id. at 47, 50, 56.

On the afternoon of March 21, 1996, Special Agent Cali and other agents observed the CI as he met with Chino in front of the auto parts shop. Id. at 26. Special Agent Cali did not observe Mr. Nunez. Id. The CI wore a body wire to this meeting, but Special Agent Cali never received or reviewed a transcript of this conversation. After the meeting, the CI told Special Agent Cali that he had made arrangements to purchase five kilograms of cocaine from Chino for $19,800 per kilogram. Id. at 27. He said that Tite and Chino would deliver it to him. Id. at 27–28.

Later in the afternoon of March 21, 1996, the CI told Special Agent Cali that he had received a page from someone at the auto parts shop. Id. at 29. The CI returned the call and the conversation was again monitored and taped by Special Agent Cali. Id.

---

1. Mr. Nunez initially also moved to suppress evidence based on the allegedly suggestive identification procedures used by the Government. However, Mr. Nunez, through counsel, withdrew this argument during the evidentiary hearing.

While Special Agent Cali was again unable to understand the conversation, because it was in Spanish, he heard the name Tite mentioned and noted that there were three different voices speaking on the telephone. Id. at 29–30, 71. The CI told Special Agent Cali that Tite and Chino had requested that the transaction occur that same day, rather than the following day, but he had refused. Id. at 30, 31. Special Agent Cali never received or reviewed a transcript of this conversation, prior to Mr. Nunez's arrest. Id. at 47, 50, 56.

On the morning of March 22, 1996, the CI advised Special Agent Cali that he had spoken with Tite who had confirmed that the 5 kilogram sale of cocaine would occur. Id. at 31. Later that morning, Special Agent Cali again monitored and recorded a call made by the CI to the auto parts shop. Id. The CI told Special Agent Cali that he had spoken to Tite and Chino and had confirmed the arrangements for the sale. Id. at 32. The transaction was to occur the next day at 92nd Street and Broadway in Manhattan. Id. Special Agent Cali never received or reviewed a transcript of this conversation prior to Mr. Nunez's arrest. Id. at 47, 50, 56.

After this last telephone conversation, Special Agent Cali arranged for surveillance of the auto parts shop. Id. at 32, 33. The officers conducting the surveillance observed two people, later identified as Mr. Vargas and Mr. Nunez, talking in front of the auto parts shop. Id. at 33.

A second DEA team conducted surveillance at 92nd Street and Broadway, the site at which the drug transaction was to occur. Id. at 34, 35. The surveillance team observed a blue car parked on the street. Id. at 35. The car matched the description of the automobile that the CI had told Special Agent Cali would be used for the transaction. Id. at 34, 35. The agents observed Mr. Vargas and a man later identified as the defendant Jose Maria Bautista standing by the car. Id. at 35, 36. The CI then met with the men. Id. Then a third man, later identified as defendant Luis Jose Nolasco Jr., got out of the car, removed two bags from the trunk of the car and walked down the street with the CI, Mr. Vargas and Mr. Bautista. Id. at 36. The CI then gave a signal and agents arrested the three men. Id. Five kilograms of cocaine were found in the bags. Id. at 48.

Shortly after the arrest, the CI was shown the surveillance tape that was filmed that morning outside of the auto parts shop. Id. at 37. The CI identified one of the men on the tape as Tite. Id. at 37, 38. Special Agent Cali and the CI then went to the auto parts shop to locate Tite. Id. at 38. The CI pointed out Tite standing in front of the auto body shop. Id. at 38. Special Agent Cali than arrested Tite, later identified as Mr. Nunez. Id. at 39.

Less than an hour after Mr. Nunez was arrested, Detective Pedro Colon, who speaks Spanish, was brought to the 6th floor of the DEA building to give Mr. Nunez his *Miranda* warnings. Id. at 6. Detective Colon read Mr. Nunez his rights in Spanish from a card. Id. at 9. Mr. Nunez was not handcuffed during this time, nor was he threatened in any way. Id. at 11, 12.

Both Detective Colon and Special Agent Cali testified credibly that Mr. Nunez was given his *Miranda* warnings in Spanish, affirmed that he understood them and agreed to answer questions. Id. at 10, 40. Detective Colon then asked Mr. Nunez if he was willing to answer questions. Id. After Mr. Nunez agreed to answer questions, Detective Colon translated Special Agents Cali's questions for Mr. Nunez. Id. at 10–11. Mr. Nunez was asked about his involvement in the cocaine transaction and denied any involvement. Id. at 63, 64.

## II.

Mr. Nunez first contends that he was arrested without probable cause and that all evidence flowing from the arrest should therefore be suppressed. Probable cause to arrest exists when "the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir.1990) (citing *Brinegar v. United*

*States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949)); *see also United States v. Moreno,* 897 F.2d 26, 31 (2d Cir.), *cert. denied,* 497 U.S. 1009, 110 S.Ct. 3250, 111 L.Ed.2d 760 (1990). Moreover, " '[p]robable cause' requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Bakhtiari,* 913 F.2d 1053, 1062 (2d Cir.1990), *cert. denied,* 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991) (quoting *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983)).

■ Information provided to law enforcement officers by reliable confidential informants can be the basis for a determination of the existence of probable cause. *See United States v. Gonzalez,* 835 F.2d 449, 450–51 (2d Cir.1987); *see also Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *United States v. Gaviria,* 805 F.2d 1108 (2d Cir.1986), *cert. denied,* 481 U.S. 1031, 107 S.Ct. 1960, 95 L.Ed.2d 531 (1987). A reliable informant's information provides even greater evidence of probable cause if it is corroborated by independent police work. *Gates,* 462 U.S. at 241–42, 103 S.Ct. at 2333–34 (reaffirming *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)); *Gonzalez,* 835 F.2d at 450.

In this case, Special Agent Cali relied on information provided by a CI who had proven reliable over a considerable number of years. Moreover, Special Agent Cali corroborated many of the details provided by the CI. For example, the drug transaction occurred at the precise time and place stated by the CI. The transaction was arranged through a series of telephone conversations and meetings some of which were recorded. A car of the exact color and model specified by the CI was used to conduct the transaction. The arrests of Mr. Vargas, Mr. Bautista, and Mr. Nolasco occurred after the CI gave the signal that the narcotics transaction occurred. The agents were able to observe the transaction and the bags being taken from the car trunk. Mr. Nunez was only arrested after the CI had identified him as the person with whom he had been arranging the narcotics transaction.

Special Agent Cali was also able to corroborate information specifically related to Mr. Nunez. Agents working with Mr. Cali observed Mr. Nunez talking with Mr. Vargas hours before Mr. Vargas was arrested with drugs in his possession. Moreover, while unable to understand the exact substance of the conversations he taped between the CI and people at the auto body shop, Special Agent Cali did hear Mr. Nunez's name, "Tite," mentioned during those conversations.

Thus, this Court finds that Special Agent Cali, based on the definite and precise information the CI provided, and the corroboration of that information, and given the prior history of reliability of the informant and the definite identification of Mr. Nunez by the CI, had ample probable cause to arrest Mr. Nunez. Special Agent Cali had been told that Mr. Nunez, along with Mr. Vargas, had agreed to sell the CI cocaine. He had listened to conversations that corroborated that information. Finally, Special Agent Cali and his fellow agents arrested Mr. Nunez only after watching the narcotics transaction occur and after the CI identified Mr. Nunez as one of the people who had arranged it. This evidence, taken as a whole, was clearly sufficient "to warrant a person of reasonable caution in the belief that an offense had been committed by the person to be arrested." *Gonzalez,* 835 F.2d at 450–51 (citing *Draper* 358 U.S. at 313, 79 S.Ct. at 333).

Mr. Nunez argues that Special Agent Cali should have had the tapes of the recorded conversations translated for him before Mr. Nunez was arrested. Mr. Nunez further argues that those tapes would have shown that he was not as extensively involved in the transaction as the CI related. The Government has provided draft transcripts of three of the recorded telephone conversations. A fair reading of those transcripts actually supports the CI's representation that Mr. Nunez did participate in setting up the drug transaction.

■ What the transcripts actually contain however, is not relevant to the probable cause analysis. The proper inquiry is only

what Special Agent Cali knew at the time the decision to arrest was made, not what he would have known if he had received or reviewed transcripts of the conversations. At the time the arrest was made, Special Agent Cali had been told by the CI what was said during the conversations. Special Agent Cali had no reason to question the CI's description of those conversations and thus his reliance on the CI's accounts of those conversations was reasonable. The CI had proven reliable in the past and the transaction was proceeding exactly as the CI explained—on the basis of the conversations—that it was supposed to proceed. Thus, what Special Agent Cali knew at that time, which included but was not limited to the CI's accounts of the conversations, constituted probable cause to arrest.

Therefore, Mr. Nunez's motion to suppress based on the lack of probable cause to arrest is denied.

### III.

 Mr. Nunez also contends that he was not properly read his *Miranda* rights upon his arrest. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires that an individual who is in custody must be advised of certain rights. The Government must prove by a preponderance of the evidence that Mr. Nunez knowingly and voluntarily waived his *Miranda* rights and that any statements were not the product of coercion. *See Colorado v. Connelly*, 479 U.S. 157, 167–69, 107 S.Ct. 515, 521–23, 93 L.Ed.2d 473 (1986); *see also United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991); *United States v. Major* 912 F.Supp. 90, 96–97 (S.D.N.Y.1996).

The Government has proved by a preponderance of the evidence that Mr. Nunez, having been advised of his *Miranda* rights, knowingly and voluntarily waived his *Miranda* rights and that the government did not coerce any statements. Both Special Agent Cali and Detective Colon testified credibly that Mr. Nunez was read his rights by Detective Colon in Spanish. Both law enforcement officers also testified that Mr. Nunez stated that he understood his rights and agreed to answer questions. There is no

credible evidence to refute that testimony. Moreover, it is uncontroverted that Mr. Nunez was not handcuffed or threatened and there is no evidence of coercion in any way. Thus, Mr. Nunez's motion to suppress based on Mr. Nunez's allegation of a violation of his *Miranda* rights is denied.

### CONCLUSION

For the foregoing reasons, the defendant's motion to suppress is DENIED.

**SO ORDERED.**