**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Grant SHAW, Defendant–Appellant.**

No. 92–50343.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 1993.

Decided Aug. 19, 1993.

Roger S. Hanson, Santa Ana, CA, for defendant-appellant.

Mike Davis, Asst. U.S. Atty. (argued), and John Shepard Wiley, Jr., Asst. U.S. Atty. (signed the briefs), Los Angeles, CA, for plaintiff-appellee.

Before: HARLINGTON WOOD, Jr.,* REINHARDT, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Grant Shaw fraudulently obtained a line of credit for $2 million from El Camino Bank by misrepresenting financial reports. Shaw was charged with and pled guilty to bank fraud under 18 U.S.C. § 1344, and was sentenced under the 1989 United States Sentencing Guidelines to one year in prison. The district court based Shaw's sentence on the "intended loss" associated with the loan under U.S.S.G. § 2F1.1, which the court assumed to be the total amount of the fraudulently obtained loan. Shaw argues that the district court applied an incorrect legal definition of "intended loss," and that "intended loss" under the 1989 Guidelines should be the subjective amount Shaw intended for the bank to lose. We agree that "intended loss" is the amount the defendant subjectively intended not to repay. Under the 1989 Guidelines, it is this figure, rather than the total at risk from the bank's perspective, which is to be compared with the amount actually lost by the victim, for purposes of sentencing. We therefore vacate the sentence and remand.

## I

Shaw owned a small business named Shaw Lumber Company ("SLC"). Shaw obtained a $2 million line of credit for SLC from El Camino Bank. On several occasions, Shaw doctored financial reports and committed other frauds to convince El Camino Bank that SLC was creditworthy. On January 16, 1990, El Camino discovered the fraud and that SLC was insolvent, and estimated that the bank's loss was $1,999,992.79, which was the outstanding debt on Shaw's line of credit. El Camino sought restitution from Shaw and others. Through these efforts, some money has been recovered.

Shaw pled guilty to bank fraud and was sentenced under the 1989 Guidelines. Section 2F1.1 increases the base offense level (6)

depending on the money lost because of fraud, and instructs the court to use the highest of the "actual" or "probable or intended" loss. U.S.S.G. § 2F1.1, comment. (n. 7) (Nov. 1, 1989). The district court calculated Shaw's offense level based on an "intended loss" of $2 million. It accordingly increased the offense level by 12, to a total of 18. See U.S.S.G. § 2F1.1(b)(1)(M) (Nov. 1, 1989) (losses over $1.5 million). The court then departed downward to level 13 and sentenced Shaw to one year.[1] Shaw now appeals.

The district court had jurisdiction under 18 U.S.C. § 3231 and this court has jurisdiction under 28 U.S.C. § 1291.

## II

■ The district court made no findings on the amount of actual loss, or how much Shaw subjectively intended for the bank to lose. As we understand it, the court's guideline determination was based on the legal conclusion that "intended loss" meant the face amount of the line of credit, regardless of Shaw's subjective intent. We review legal interpretations of the Guidelines de novo, and factual findings for clear error. *United States v. Davis*, 922 F.2d 1385, 1387–88 (9th Cir.1991).

Shaw argues that the district court erred in calculating his offense level based on a "loss" of $2 million. According to Shaw, the base offense level should have been 6 since he intended no loss and the bank will have incurred no actual loss on account of civil recoveries.

■ We do not decide what Shaw's offense level should actually have been, as the district court made no findings on Shaw's intent or on the amount of the bank's actual loss.[2] However, we hold that for sentencing purposes under the 1989 Guidelines "intended loss" is not necessarily the gross amount of the loan. Rather, under the 1989 Guidelines, the district court must determine whether

* Honorable Harlington Wood, Jr., Senior United States Circuit Judge, Seventh Circuit Court of Appeals, sitting by designation.

1. The government does not appeal the district court's downward departure.

2. By the same token, we express no opinion on which version of the Guidelines will be applicable on resentencing.

the defendant intended to repay the fraudulently obtained loan, and must separately determine the actual loss. The sentence is then calculated based on the higher of the two amounts.

The 1989 version of the commentary to U.S.S.G. § 2F1.1 states that "if a probable or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss." U.S.S.G. § 2F1.1, comment. (n. 7) (Nov. 1, 1989). "Intended loss" is not defined.

We recently left open the question of how to define "intended loss" when the defendant intends to pay back a fraudulently obtained loan. In *United States v. Galliano*, 977 F.2d 1350, 1353 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1399, 122 L.Ed.2d 772 (1993), the defendant obtained a loan through fraud, and the district court found that he never intended to repay it. Because of that factual finding, the district court used the gross loan amount to determine the intended or attempted loss (and thereby the offense level). We affirmed, noting that "[w]e do not reach the question whether a person who *does* intend to repay a loan obtained by fraud is accountable for sentencing purposes for the full amount of the loan." *Id.* (emphasis in original); *see also United States v. Hutchison*, No. 91–10225, 1993 WL 137780 (9th Cir. May 4, 1993) (also leaving the question open).

There appears to be a difference of opinion among the circuits on whether the defendant's intent to repay a fraudulently obtained loan is relevant, or should be taken to be the gross amount of the loan for which the defendant put the lender at risk. In *United States v. Brach*, 942 F.2d 141 (2d Cir.1991), the Second Circuit held that "loss" was the amount taken, or put another way, that "intended" and "probable" loss equate with the gross amount of a fraudulently obtained loan. *Id.* at 143. Under this view, a defendant's claim that he intended to repay the loan is largely immaterial. Other courts, best exemplified by the Third Circuit in *United States v. Kopp*, 951 F.2d 521, 523 (3d Cir.1991), have concluded that "loss" on a fraudulently obtained loan is the higher between: the amount of money the victim has actually lost,

estimated at the time of sentencing (not the potential loss as measured at the time of the crime); and, the amount of loss that the defendant intended to inflict on the victim, or the amount of probable loss, if either are estimable and higher. *Id.* at 531; *see also United States v. Menichino*, 989 F.2d 438, 441–442 (11th Cir.1993); *United States v. Rothberg*, 954 F.2d 217, 218 (4th Cir.1992); *United States v. Smith*, 951 F.2d 1164, 1167 (10th Cir.1991); *United States v. Schneider*, 930 F.2d 555, 559 (7th Cir.1991); *cf. United States v. Hughes*, 775 F.Supp. 348 (E.D.Cal. 1991). Under this view, "loss" is not "possible" loss, but actual loss, or probable or intended loss, whichever is greater.

The government argues that sentences under § 2F1.1 should be based on the "risk of loss" associated with the fraudulently obtained loan. We disagree. As the Third Circuit said in *Kopp*, it would be a "linguistic stretch" to define "intended" loss as the "possible" loss. 951 F.2d at 533. We agree with *Kopp* that "intended" loss is the loss the defendant intended to inflict on the victim. *Id.* at 531.

■ The government also argues that since Shaw's line of credit was unsecured, the "loss" should be $2 million. The 1989 Guidelines, however, do not distinguish between secured and unsecured debt when considering "intended" loss. Under the 1989 Guidelines, the security backing a loan may affect the actual or probable loss, and may influence a court in deciding how much the defendant subjectively intended for the bank to lose. However, the fact that a loan is unsecured does not, by itself, require that "intended loss" equate with the total at risk.

The government also argues that the actual loss was over $1.5 million and therefore an offense level of 18 would have been used in any event. We cannot say whether this is so in the absence of findings as to actual loss.

Finally, the government argues that Shaw cannot complain about his sentence because the sentence is lenient. Regardless of how the government characterizes Shaw's sentence, since Shaw appeals and since the court used an incorrect legal standard in calculat-

ing the guideline range, we must vacate the sentence and remand for resentencing.

On remand, the district court will have to determine which version of the Guidelines applies. However, under the 1989 Guidelines, the district court should determine how much, if any, the bank actually lost, and the extent to which, if at all, Shaw subjectively intended to repay what he had borrowed. The court should then use the higher figure to calculate the offense level. The court may depart from that level if the circumstances warrant a departure, and will be free in this case to reconsider the reasonableness of departing and of the degree of departure in light of its determination of actual loss and intended loss.

VACATE AND REMAND.