**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose A. ALONSO, Defendant–Appellant.**

No. 94–10082.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1994.

Decided March 2, 1995.

Howard Sohn, Miami, FL, for defendant-appellant.

Daniel R. Schiess, Asst. U.S. Atty., Las Vegas, NV, for plaintiff-appellee.

Before: SKOPIL, NORRIS, and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Jose Alonso was convicted of one count of conspiracy, and one count of fraud and attempted fraud in connection with access devices (credit cards) in violation of 18 U.S.C. §§ 371, 1029(a)(1), and 1029(b)(1). The arrest and conviction stem from Alonso's participation in a scheme in which Alonso provided fake credit cards to his coconspirators. He and his coconspirators then would enlist a "friendly" store that would process their fraudulent charges and provide cash or jewelry. The Secret Service in conjunction with the Las Vegas Metropolitan Police Department arranged a sting, and arrested Alonso and two of his coconspirators.

A jury convicted Alonso on September 17, 1993. On February 11, 1994, the district court sentenced him to 30 months incarceration. On appeal, Alonso raises a variety of issues regarding his conviction and sentence. For the reasons that follow, we affirm.

## I.

Secret Service agents Operskalski and Brenner went undercover to a hotel in Las Vegas. They met with an individual who introduced them to Peloche, one of the conspirators.

When agent Operskalski told Peloche that he had friends in the jewelry business, Peloche proposed the scheme: Peloche had a friend, who turned out to be the defendant in this case, Jose Alonso, who could supply fake credit cards. Peloche suggested that Operskalski take Peloche and his coconspirators to a merchant who would be willing to generate $100,000 in fake credit card vouchers. The proceeds would then be split, with half going to Peloche and his partners, and half going to Operskalski and the cooperating merchant. Peloche claimed that a man would be arriving from Miami that night with the fake cards. Alonso did in fact fly into Las Vegas that night from Miami.

The next day, agent Operskalski, along with agent Brenner, met Peloche on the street outside a casino. Peloche was accompanied by Alonso and by Velazco. During the course of the conversation between Operskalski and Peloche, Alonso scanned the area and examined the interiors of nearby parked cars.

Following a disagreement between Operskalski and Peloche regarding the amount to be charged, Alonso and Velazco joined the conversation. Alonso said that he only wanted to charge $20,000 that day, and more on following days. Operskalski agreed to this lower figure, but did not agree to meet again the following day.

All five people then went to a nearby jewelry store, the owner of which had already agreed to participate in the sting. Operskal-

ski and Peloche began processing the cards in the rear of the store while Alonso remained at the entrance, studying the owner and acting as a lookout. Alonso appeared to become suspicious of the undercover agents and told Peloche in Spanish, "no more." The agents and others then arrested all three conspirators.

At trial, the prosecution sought to have agents Operskalski and Brenner testify as experts regarding Alonso's counter-surveillance activities.[1] Over Alonso's objection, both agents gave expert opinions that Alonso's behavior was consistent with counter-surveillance techniques.

After a two day trial, the jury convicted Alonso. Alonso made several objections to his presentence report, which the district court overruled. Alonso is currently serving a thirty month sentence, to be followed by a three year period of supervised release and a $100 special assessment. Alonso appeals from his conviction and sentence. He argues that the district court erred in admitting expert testimony regarding his engagement in counter-surveillance, that the prosecution failed to present evidence sufficient to support the conviction, and that the district court erred in imposing a two-level enhancement for Alonso's leadership role, a two-level enhancement for obstruction of justice, and a six-level enhancement based on the amount of the intended loss.

## II.

■ Alonso challenges the admission of Operskalski and Brenner's expert testimony on a number of grounds. This Court reviews the decision to admit expert testimony for an abuse of discretion. *United States v. Rahm,* 993 F.2d 1405, 1409–10 (9th Cir.1993). If, however, the appellant did not object to the challenged testimony at trial, this Court will reverse only if admission of the testimony constituted plain error affecting substantial rights. Fed.R.Crim.Proc. 52(b); *United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993).

1. "Counter-surveillance" refers to activities designed to avoid or detect the surveillance efforts of law enforcement.

We hold that the district court's decision to admit expert testimony was not an abuse of discretion, and that the court's admission of the challenged testimony, to which Alonso did not object at trial, was not plain error.

### A. It was proper to allow the agents to testify as experts.

■ The district court allowed agents Operskalski and Brenner to testify as experts for the purpose of "discussing observations of people, counter-surveillance and surveillance." ER at 20; see also ER at 23–24. This topic is a proper subject of expert testimony.

Federal Rule of Evidence 702 allows a witness to testify as an expert "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Alonso argues that the issues of surveillance and counter-surveillance are not complex enough to require expert testimony. This court has on several occasions, however, approved the admission of expert testimony by law enforcement officers to explain how a defendant's conduct conforms to typical "methods and techniques employed in an area of criminal activity." *United States v. Espinosa,* 827 F.2d 604, 612 (9th Cir.1987), *cert. denied,* 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988); *see also United States v. Bosch,* 914 F.2d 1239, 1243 (9th Cir.1990); *United States v. Andersson,* 813 F.2d 1450, 1458 (9th Cir.1987); *United States v. Maher,* 645 F.2d 780, 784 (9th Cir.1981) (stating that testimony regarding surveillance and counter-surveillance could have come in as expert testimony). Surveillance and counter-surveillance surely constitute "methods and techniques" used in criminal activity and are therefore a proper subject of expert testimony.

■ Rule 702 also requires that the witness testifying as an expert be qualified to do so: "[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Alonso conceded in his brief and at oral argument that the agents were qualified to testify as experts. *See, e.g.,* Appellant's Br. at 14 ("Defense

counsel while acknowledging the officer's expertise and qualifications to testify as to their limited area of expertise....)"); *id.* at 16 ("While acknowledging that Agent Operskalski and Agent Brenner[ ] may have possessed the necessary training, experience and qualifications to be qualified by the court as ... expert witness[es]....").

The agents were qualified to testify as experts regarding a topic that was properly the subject of expert testimony. Thus, the district court did not abuse its discretion in allowing agents Operskalski and Brenner to testify as experts regarding surveillance and counter-surveillance.

### B. The witnesses did not exceed the scope of their expertise.

Alonso argues that both witnesses impermissibly testified outside the scope of their expertise by offering their opinions regarding Alonso's guilt. In the words of Alonso's counsel, "they went too far."

■ It is well established that an expert may not state his opinion about the defendant's guilt. *See United States v. Lockett,* 919 F.2d 585, 590 (9th Cir.1990) ("A witness is not permitted to give a direct opinion about the defendant's guilt or innocence."); *United States v. Kinsey,* 843 F.2d 383, 388 (9th Cir.), *cert. denied,* 487 U.S. 1223, 108 S.Ct. 2882, 101 L.Ed.2d 916 *and cert. denied,* 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 75 (1988); *Espinosa,* 827 F.2d at 612.

Alonso points to three statements, one made by Operskalski and two made by Brenner, that he argues state an opinion regarding Alonso's guilt:

#### 1.

■ On direct examination of Operskalski, the prosecutor asked the agent to give his opinion on Alonso's observed behavior—looking in cars, looking at people in cars, examining the sidewalk near where he was standing. The following exchange occurred:

Q: ... [W]hat's the purpose of looking into cars and looking at people?

A: To look for police radios, police equipment, anything that might reveal the existence of—of true police-type sur-

veillance, looking for police-type vehicles.

Q: Okay. Now how would you describe Mr. Alonso's behavior; consistent with someone being a tourist or being someone involved in a criminal activity?

A: Clearly somebody who was involved in a criminal activity.

ER at 22. Alonso did not object to this line of questioning. Thus, we must determine whether its admission constituted plain error.

On its face, this testimony clearly did not constitute an "opinion" that Alonso was guilty of the crimes charged, i.e., conspiracy, credit card fraud, and attempted credit card fraud. Agent Operskalski merely stated that Alonso's behavior was consistent with that of someone engaged in counter-surveillance because he was involved in "a criminal activity."

This testimony is analogous to testimony this Court has approved on prior occasions. For instance, in *United States v. Stewart*, 770 F.2d 825, 831 (9th Cir.1985), *cert. denied*, 474 U.S. 1103, 106 S.Ct. 888, 88 L.Ed.2d 922 (1986), this Court approved the admission of the expert testimony of a DEA agent stating that the defendant's driving behavior indicated he was attempting to avoid surveillance. In *Espinosa*, 827 F.2d at 611–13, this Court approved expert testimony of a law enforcement officer to explain that the defendant's activities were consistent with drug dealing. In *Bosch*, 914 F.2d at 1242–44, this Court approved admission of expert testimony of an IRS special agent to explain how the defendant's conduct could have aided a cocaine distribution ring. In *Kinsey*, 843 F.2d at 387, we approved expert testimony concluding that the defendant was involved in the distribution of cocaine. In *United States v. Fleishman*, 684 F.2d 1329, 1335–36 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982), we allowed an officer to testify that the defendant was acting as a lookout in a drug trafficking conspiracy.

■ These cases show that a district court may properly allow expert testimony from a law enforcement officer that will help the jury understand how otherwise innocent conduct—such as looking inside parked cars—might in fact be consistent with or even indicative of criminal conduct. *See Andersson*, 813 F.2d at 1458 ("Law enforcement officers may testify concerning the techniques and methods used by criminals.") (quoting *United States v. Rogers*, 769 F.2d 1418, 1425 (9th Cir.1985)).

■ Alonso's counsel conceded at oral argument that the caselaw allows a properly qualified expert to give his opinion that a defendant's behavior is, for example, consistent with being a lookout. He asserts, however, that an expert goes too far when he testifies that such behavior is consistent with *illegal* activity. We reject this distinction. Acting as a lookout in furtherance of a conspiracy *is* illegal, as is aiding a cocaine distribution ring, or any number of the other behaviors we have allowed experts to explain to juries. We decline to endorse a rule that would allow experts to opine that defendants are engaged in these illegal activities only so long as they do not label them as "illegal."

Finally, we emphasize that Operskalski's opinion that Alonso was engaged in "illegal activity" simply does not constitute an opinion that Alonso was guilty of the crimes charged. Agent Operskalski simply described Alonso's behavior, explaining that it might not be as innocent as a lay juror might think. He did not give his opinion regarding Alonso's guilt. In light of the caselaw that concludes that admission of similar testimony does not constitute an abuse of discretion, we have no difficulty concluding that admission of this first piece of challenged testimony was not plain error.

2.

On direct examination of agent Brenner, the prosecutor asked the agent to give his opinion as to Alonso's behavior:

A: Based on what I observed in the body language and the way Mr. Alonso was looking around, he was an—an experienced subject involved in criminal activity, that he knew exactly what he was looking for and exactly how to do it without being detected.

ER at 24. Alonso objected to this testimony. The court sustained the objection, ER at 25, struck the testimony, ER at 25, and gave a proper instruction regarding stricken testimony. SER at 45 ("Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.").

■ Because the district court struck this testimony and gave a proper limiting instruction to the jury, Alonso cannot—despite counsel's efforts to do so at oral argument—complain of any prejudice from this testimony on appeal.

### 3.

The prosecutor then continued his examination:

Q: Okay. Tell us the basis of your opinion, that is, specifically tell us what he did and your conclusions based—and what those—what he did means to you, based on your experience.

A: Based on the—the way he looked at me and Agent Operskalski, and I—and I, once again, can only base it on my experience, that he was definitely concerned about who we were and he was sizing us up, so to speak.

Q: Okay. How—how did he look at you, if you can describe that?

A: He looked us up and down. To me, he was trying to figure out if we were someone that could be trusted involved in a criminal activity.

ER at 25. Alonso did not object to this line of questioning.

■ Alonso argues that the following phrase constitutes a direct opinion regarding his guilt: "he was trying to figure out if we were someone that could be trusted involved in a criminal activity." This statement is less obviously an explanation that the defendant's behavior was consistent with counter-surveillance than the first piece of challenged testimony. We think it conceivable, however, to interpret the statement as an attempt to explain that "looking us up and down" is a typical behavior of someone trying to avoid surveillance.

Most significant to our rejection of Alonso's contention is that Alonso does not explain in what way this statement is tantamount to an opinion that he was guilty of the charged crimes. We cannot conceive of one. Again, because Alonso did not object to this testimony at trial, we need not decide whether this testimony exceeded the scope of agent Brenner's expertise, or directed the jury to find that the Alonso was guilty of conspiracy or credit card fraud simply because he was engaged in counter-surveillance. *Cf. Lockett,* 919 F.2d at 590 (upholding the admission of expert modus operandi testimony because it left the jury free to decide whether the defendant in the present case was actually guilty). Our analysis of this testimony and its role in the trial, however, leads us to hold that the admission of the testimony was not plain error.

### C. Alonso's other arguments regarding the expert testimony are without merit.

Alonso appears to argue that the expert testimony was overly prejudicial profile evidence, and impermissibly stated an opinion regarding whether he had the requisite mental state to commit the crime, in violation of Fed.R.Evid. 704(b). We reject these arguments.

■ Testimony explaining that innocent appearing behavior may indicate criminal activity is not inherently prejudicial. *See Lockett,* 919 F.2d at 591 (reasoning that expert testimony is not prejudicial simply because it explains innocent actions); *cf. United States v. Lim,* 984 F.2d 331, 335 (9th Cir.) (holding that admission of inadmissible and prejudicial drug courier profile evidence is harmless if the record reveals sufficient other evidence to establish guilt), *cert. denied,* —— U.S. ——, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993). We hold that the agent's testimony was not unfairly prejudicial.

■ Moreover, and contrary to Alonso's arguments otherwise, Fed.R.Evid. 704(b) has no application to this case. Rule 704(b) states: "No expert witness *testifying with respect to the mental state or condition of a defendant* in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or

condition constituting an element of the crime charged or of a defense thereto." *Id.* (emphasis added). Neither agent was testifying as an expert regarding Alonso's mental state. This argument therefore fails.

In sum, we reject all of Alonso's arguments regarding the agents' testimony.

### III.

■ Alonso challenges the sufficiency of the evidence against him. In addressing a challenge to the sufficiency of evidence, this Court looks to the record to determine whether any rational factfinder could have found the elements of the crime beyond a reasonable doubt. *United States v. Bishop,* 959 F.2d 820, 829 (9th Cir.1992).

As discussed above, Alonso was indicted and convicted on two counts: one count of conspiracy, and one substantive count of credit card and attempted credit card fraud. He asserts in the second argument heading in his brief that "[t]he evidence presented by the prosecution ... was legally insufficient to establish the defendant's knowing and willful participation in the conspiracy and substantive offense of fraud involving the use and/or production of counterfeit access devices." Appellant's Br. at 25. Although he does not address his arguments to the elements of the specific counts, we read his argument as an attack on the sufficiency of the evidence on both the conspiracy and substantive fraud count.

*A. The evidence was sufficient to support the conspiracy count.*

■ A conspiracy conviction requires "1) an agreement to accomplish an illegal objective, 2) coupled with one or more acts in furtherance of the illegal purpose, and 3) the requisite intent necessary to commit the underlying substantive offense." *United States v. Penagos,* 823 F.2d 346, 348 (9th Cir.1987). Once there is proof of a conspiracy, the prosecution need only show a slight connection between the defendant and the conspiracy. *United States v. Foster,* 985 F.2d 466, 469 (9th Cir.), *amended,* 995 F.2d 882 (1993), *and amended,* 17 F.3d 1256 (1994). Moreover, "[c]onnection to a conspiracy may be inferred from circumstantial evidence." *Id.* We believe the prosecution introduced evidence that would allow a rational factfinder to find each of the required elements beyond a reasonable doubt.

#### 1.

■ Existence of agreement: Peloche told agent Operskalski that Alonso would bring the credit cards from Miami. SER at 4. This indicates that Alonso had agreed even before arriving in Las Vegas to engage in fraud. The prosecution also introduced evidence that Alonso had repeatedly referred to the persons who would engage in the fraud as "we." *See, e.g.,* SER at 13 ("And [Alonso] said, 'We can do twenty thousand (20,000) today ... and tomorrow we do twenty thousand (20,000) and so on and so on.'") (testimony of agent Operskalski). This and other evidence would allow a rational factfinder to find the existence of an agreement to which Alonso was a party.

#### 2.

Act in furtherance: "Counter-surveillance activities qualify as acts in furtherance of a conspiracy." *Penagos,* 823 F.2d at 348. The prosecution introduced evidence that Alonso was engaged in counter-surveillance. During a meeting between the conspirators and the agents Operskalski and Brenner, Alonso stood away at a distance, "looking into vehicles, looking at people in cars, looking around at—at people and things here on the—on the sidewalks and in the streets at that corner." SER at 18. This and other evidence sufficiently supports the contention that Alonso acted in furtherance of the conspiracy by engaging in counter-surveillance.

Alonso cites *Penagos* for the proposition that merely "scanning" up and down the street while illegal activity is occurring is not enough. Alonso misreads *Penagos.* This Court in *Penagos* held that the prosecution had not introduced sufficient evidence to support its counter-surveillance theory: the alleged counter-surveillance in that case did not occur at a time or place where there was a high risk of detection of the illegal activity, the defendant was present at only one of three occasions in which counter-surveillance might have been helpful to the conspirators, and the prosecution had not identified any "persons or activities that were objects of

defendant's attention as he looked up and down the street." *Penagos*, 823 F.2d at 349.[2] Given the overwhelming evidence of Alonso's role as a lookout, his reliance on *Penagos* avails him nothing.

### 3.

Intent to commit underlying offense: The prosecution introduced evidence that Alonso negotiated the specifics of the intended transaction with agent Operskalski. He told Operskalski that he thought it was too risky to charge $100,000 in one day, but made the following offer: "We can do twenty thousand (20,000) today, twenty or thirty thousand today...." SER at 13 (testimony of agent Operskalski). This and other evidence would allow a rational jury to find that Alonso had the intent necessary actually to commit the fraud.

We therefore hold that the evidence was sufficient to support the conspiracy charge.

*B. Alonso has waived his sufficiency of the evidence claim with regard to the substantive count.*

Alonso asserts at two points in his brief that the evidence was insufficient to support conviction on the substantive count. *See* Appellant's Br. at 25; *id.* at 28 ("the Appellant would submit that the evidence presented by the Government to sustain his conviction for both the conspiracy and substantive charge was legally insufficient and a reversal of his convictions in the above-referenced cause is mandated by this court"). Alonso does not present any argument to support this asser-

tion, nor does he identify which elements of the substantive charge the government failed to establish.

■ These unsupported assertions violate Fed.R.App.Proc. 28(a)(5), which states in part that "[t]he argument must contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on." Because Alonso's brief fails to meet these requirements, we deem Alonso's contention regarding the substantive count waived.

■ Appellate courts frequently refuse to address issues that appellants fail to develop in their briefs. The Court of Appeals for the First Circuit, for example, has refused to address an issue merely "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," in violation of Rule 28(a)(5). *United States v. Tracy*, 989 F.2d 1279, 1286 (1st Cir.) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990)), *cert. denied*, —— U.S. ——, 113 S.Ct. 2393, 124 L.Ed.2d 294 (1993); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir.1993) ("It is ... well settled ... that casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal.").

Alonso does not state the element or elements he thinks the prosecutor failed to prove.[3] He does not cite any authority regarding what constitutes sufficient evidence to establish a violation of this provision.[4]

·　　·　　·　　·　　·

**2.** *Cf. Penagos*, 823 F.2d at 349–50:
We agree that counter-surveillance activities constitute acts in furtherance of a conspiracy. However, the government did not produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that defendant acted as a lookout or committed any act in furtherance of the conspiracy.

**3.** The jury convicted Alonso of violating 18 U.S.C. § 1029(a)(1), which provides:
§ 1029. **Fraud and related activity in connection with access devices**
(a) Whoever—
(1) knowingly and with intent to defraud produces, uses, or traffics in one or more counterfeit access devices;

shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.

**4.** He fails to cite the one published opinion of this Court addressing sufficiency of the evidence to support a conviction under this provision: *United States v. Momeni*, 991 F.2d 493 (9th Cir.) (per curiam), *cert. denied*, —— U.S. ——, 114 S.Ct. 280, 126 L.Ed.2d 230 (1993). The issue in that case was similar to the issue in this case: whether the defendant was in fact the person who engaged in the credit card fraud.

Rather, his argument goes entirely to the sufficiency of the evidence to support the conspiracy count. Alonso never articulates any theory as to how the district court erred with respect to this second issue, however. *Cf. Kost,* 1 F.3d at 182 ("They never articulate or argue anywhere in that brief the necessary contention that the district court erred...."). As the *Tracy* court stated, "[n]otice pleadings do not suffice for appellate briefs." *Tracy,* 989 F.2d at 1286.

We therefore decline to reach this contention.

## IV.

■ Alonso argues that the district court erred in imposing a two-level upward adjustment because of Alonso's leadership role in the offense. This Court reviews the district court's factual findings supporting application of the sentencing guidelines for clear error, and the district court's interpretation of the guidelines themselves de novo. *United States v. Buenrostro–Torres,* 24 F.3d 1173, 1174 (9th Cir.1994) (per curiam).

Section 3B1.1(c) of the sentencing guidelines provides for a two-level enhancement when the defendant has acted as "an organizer, leader, manager, or supervisor" in the offense. Here, the district court imposed a two-level enhancement because "the evidence as the court views it from the trial and from observations that have been made here today invite the court to believe in the leadership position of this Defendant." ER at 36. Alonso argues that the finding that he acted in a leadership role was clearly erroneous. We hold that it was not.

■ This Court has held that an adjustment is justified when the government shows by a preponderance of evidence that the defendant "exercised some control over others involved in the commission of the offense or [was] responsible for organizing others for the purpose of carrying out the crime." *United States v. Hoac,* 990 F.2d 1099, 1110 (9th Cir.1993) (quoting *United States v. Mares–Molina,* 913 F.2d 770, 773 (9th Cir. 1990) (quoting *United States v. Fuller,* 897 F.2d 1217, 1220 (1st Cir.1990))), *cert. denied,* —— U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994).

Here, the government provided evidence that Peloche refused to renegotiate the deal and instead referred agent Operskalski to Alonso, his boss. SER at 11. While the conspirators were conducting the fraudulent transactions, Alonso paced near the front of the store. SER at 15. After numerous transactions, Alonso went outside, consulted with Velazco, returned inside and "said to Peloche in Spanish, 'No more,' and then kind of gave him a tap on the arm to go." SER at 23. On this record, the district court's finding was not clearly erroneous. *Cf.* U.S.S.G. § 3B1.1, comment. (n. 4) ("Factors the court should consider include the exercise of decision making authority ... the degree of participation in planning or organizing the offense ... and the degree of control and authority exercised over others.").

■ Alonso also appears to argue that the enhancement was improper because other conspirators also exercised some degree of decisionmaking authority and control. He argues, for instance, that "if anyone should receive upon conviction this two level enhancement, it should be **JOSE PELOCHE,** who was clearly the one in control of all of the terms and conditions for this transaction...." Appellant's Br. at 18. Nothing in the language of the guideline, however, limits imposition of this enhancement to the participant who was *most* in control. In fact, application note 4 specifically states that "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy."

Whether Peloche was more of a leader than was Alonso is not determinative of whether the district court based its enhancement on a clearly erroneous finding of fact. We therefore affirm this two-level enhancement.

## V.

Alonso next argues that the district court erred in imposing a two-level enhancement for obstruction of justice.

Sentencing guideline 3C1.1 provides for a two-level enhancement "[i]f the defendant

willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." Alonso attacks the factual finding that he obstructed justice in this case by threatening his coconspirators. He argues the finding is clearly erroneous because it rests on a single affidavit, which he characterizes as "very brief, intentionally vague, and factually deficient." [5] We hold that the factual finding based on this affidavit—brief and vague as the affidavit may be—was not clearly erroneous.

Here, the district court accepted the following conclusion of the presentence report:

> The defendant attempted to influence and dissuade codefendant Peloche from cooperating and providing testimony in this case. Peloche felt intimidated and feared retaliation by the defendant and subsequently absconded.

This conclusion rests on an affidavit submitted by Peloche's lawyer, stating that Peloche had received threatening communications from Alonso and that Peloche "left town due to the ongoing pressure and threats" from Alonso. ER at 34.

■ We note initially that the sentencing guidelines allow a district court to "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3.

We recognize that the district court, in finding that Alonso had threatened Peloche, relied on double hearsay. The affidavit is hearsay with respect to Peloche's statement to his attorney, which in turn is hearsay with respect to the statements Alonso made to Peloche. The "fact" upon which the district court relied is the truth asserted in the internal hearsay—that Alonso made "threatening communications" to Peloche.

Despite the fact that we know of Peloche's statement regarding threats from Alonso only through two levels of hearsay, we none-

theless find that the statement bears "sufficient indicia of reliability to support its probable accuracy." Peloche made the statement to his attorney in an effort to obtain protection from the government as a part of his plea agreement. Alonso has proffered no reason why we should distrust a statement made in these circumstances and we can conceive of none. Peloche appears to have had nothing to gain by seeking protection. Thus, we decline to engage in fanciful speculation regarding potentially malevolent motivations for his statement, and hold that the statement is sufficiently reliable to support the district court's finding.

Alonso also argues that this affidavit cannot support the factual finding because it is uncorroborated. The language of the guideline does not by its terms impose any "corroboration" requirement. Alonso attempts to divine such a requirement, however, from *United States v. Petty*, 982 F.2d 1365 (9th Cir.), *amended*, 992 F.2d 1015 (1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 683, 126 L.Ed.2d 650 (1994). *Petty* quoted with approval the commentary to section 6A1.3, which quotes from a 1978 Second Circuit case allowing the use of declarations made by unidentified informants "where there is good cause for the nondisclosure ... and there is sufficient corroboration by other means." *Petty*, 982 F.2d at 1367 (quoting *United States v. Fatico*, 579 F.2d 707, 713 (2d Cir. 1978)). *Petty* also approved of the district court's reliance on a "presumptively unreliable" statement, the truth of which other evidence corroborated. *Petty*, 982 F.2d at 1369.

Thus, at its absolute broadest, *Petty* stands for the proposition that a sentencing court should rely on statements made by unidentified informants and statements that are presumptively unreliable only if there is corroborating evidence in the record. The district court here faced neither of those situations.

Neither Peloche's lawyer nor Peloche himself is an unidentified informant. Moreover, a sworn statement of an officer of the court is not presumptively unreliable, and, as discussed above, we think that Peloche's state-

---

**5.** Alonso's counsel did not object to the submission of this affidavit. Because we conclude that the factual finding based on this affidavit was not

clearly erroneous, we do not reach the question whether reliance on the affidavit constitutes plain error.

ment bears indicia of reliability. The district court therefore was free to rely on this affidavit, even though it was uncorroborated, in concluding that Alonso had obstructed justice within the meaning of the sentencing guidelines.

We therefore hold that the district court's finding was not clearly erroneous and affirm this two-level enhancement.

## VI.

Finally, Alonso argues that the district court erred in imposing a six-level enhancement based on the fact that the "intended loss" of the scheme was greater than $70,000.

Section 2F1.1 of the sentencing guidelines instructs the district court to add a varying number of levels to the base offense level depending on the amount of loss attributable to the defendant's fraud or deceit. If the loss due to fraud or deceit exceeds $70,000, the district court must add six levels. Application note 7 explains how to compute the value of the loss and notes that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." Despite the clear import of this language, Alonso argues that his sentence should be enhanced, if at all, based only on the $34,000 of fraudulent charges the conspirators actually made.[6] This argument is without merit.

 Alonso's argument regarding the intended loss enhancement has two parts, one factual and one legal. The first contention is that the conspirators did not intend to make $100,000 of fraudulent charges; rather, they only intended to charge either $50,000 or $20,000. *See* Appellant's Br. at 43. The prosecution, however, introduced sufficient evidence for the district court to conclude that the intended amount was $100,000. For instance, during the meeting in which Peloche proposed the fraud scheme to agent Operskalski, "[Peloche] suggested that we would be able to generate a hundred thousand dollars ($100,000) or more in credit card vouchers. And then from that hundred thou-

sand dollars ($100,000), he would expect to receive 50 percent for his partners and himself." SER at 4 (testimony of agent Operskalski). Thus, the district court did not clearly err in its factual finding.

Alonso's second argument is legal. He argues that "in light of the completed substantive offense, it is his actual loss, as opposed to intended and/or probable loss, which must be utilized by the District Court." Appellant's Br. at 44. He cites as support *United States v. Shaw,* 3 F.3d 311 (9th Cir. 1993). *Shaw,* however, is inapposite.

*Shaw* was a case involving a fraudulently obtained line of credit. This Court held that " 'intended loss' is not necessarily the gross amount of the loan. Rather ... the district court must determine whether the defendant intended to repay the fraudulently obtained loan, and must separately determine the actual loss. The sentence is then calculated based on the higher of the two amounts." *Id.* at 312–13.

Alonso misreads this holding to mean that the district court in this case should have based its enhancement only upon the actual loss of $34,000. We do not understand Alonso's argument regarding the application of *Shaw* to this case. *Shaw* simply said that when a defendant has been convicted in a fraudulent loan case, the district court should calculate the actual and intended losses, and enhance on the basis of the higher of the two figures. This is standard procedure under application note 7. It further held that the intended loss in the case of a fraudulent loan is the total loan or line of credit minus the amount the defendant subjectively intended to repay.

*Shaw* does not undermine the continued vitality of *United States v. Wilson,* 900 F.2d 1350, 1355 (9th Cir.1990), which held that U.S.S.G. § 2F1.1 requires a district court to enhance based on intended loss. We therefore affirm the six-level enhancement based on an intended loss of $100,000.

---

6. Alonso did not object to this enhancement in the district court. Because we conclude that the imposition of this enhancement was not error, we do not discuss whether it constitutes plain error.

## CONCLUSION

For the foregoing reasons, Alonso's conviction and sentence are

**AFFIRMED.**