UNITED STATES of America,
Plaintiff—Appellee,

v.

Robert J. PALUCH, Defendant—
Appellant.

No. 01–10665.
D.C. No. CR–98–00165–MJJ.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 17, 2003.

Decided Nov. 13, 2003.

Todd S. Aagaard, US Department of Justice, Washington, DC, for Plaintiff–Appellee.

George C. Boisseau, Esq., Santa Rosa, CA, for Defendant–Appellant.

Before REINHARDT, SILER,* and HAWKINS, Circuit Judges.

## MEMORANDUM **

Robert Paluch was convicted of three counts of smuggling merchandise into the

---

* The Honorable Eugene E. Siler, Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

United States in violation of 18 U.S.C. § 545, and one count of conspiracy to smuggle merchandise, in violation of 18 U.S.C. § 371. The district court sentenced him to 24 months in prison to be followed by three years of supervised release. He challenges his conviction and sentence on several grounds. We affirm.[1]

Venue

■ Paluch argues first that his and his alleged co-conspirators' conduct occurred entirely within Phoenix, Arizona or outside the United States–not in Oakland–and that the District of Arizona, not the Northern District of California, is therefore the proper venue. However, an offense involving the use of the mail, including importation, may be prosecuted in any district through which the imported item moved. 18 U.S.C. § 3237(a). Because the illegal shipments were sent through the Northern District of California, venue was proper there.

■ Paluch next argues that, although some of the shipments passed through Oakland, there was no evidence that the December 3, 1997 shipment (count 33) did so, and that venue in the Northern District of California was therefore improper as to that count. The government, however, may prove venue through direct or circumstantial evidence, *United States v. Childs*, 5 F.3d 1328, 1332 (9th Cir.1993), and the district court may base its factual determinations justifying venue on the basis of reasonable inferences. *See United States v. Trenary*, 473 F.2d 680, 682 (9th Cir. 1973) (holding that venue was proper in district through which "it was more rea-

sonable than not" to think defendants drove, because it was the shortest route). Past practice may serve as the basis of such inferences. *See, e.g., United States v. Aldridge*, 484 F.2d 655, 659 (7th Cir.1973) (finding that evidence of a business custom to send certain mailings from a particular office was sufficient to support venue for a charge of mail fraud in the district in which the office was located). While there is no direct evidence of the port of entry for the December 1997 shipment, the five other shipments sent by Federal Express between December 1997 and August 1998 moved through Oakland. The district court reasonably inferred from that fact that the December 1997 shipment moved through Oakland as well. Venue as to the 1997 shipment was therefore proper.

■ Paluch next argues that venue in the Northern District of California was improper with respect to the conspiracy count because all of the conspirators resided either in Phoenix or Malaysia, all of their acts occurred within Phoenix, and their only contact in the Northern District of California was PacRim, a fictitious company. Venue for a conspiracy charge is proper in any district where an overt act is committed in furtherance of the conspiracy. *United States v. Antonakeas*, 255 F.3d 714, 726 (9th Cir.2001) ("It is not necessary that the defendant himself have entered or otherwise committed an overt act within the district, as long as one of his coconspirators did."). Having concluded that venue was proper for the smuggling charges, we therefore find no basis for upsetting the district court's determination as to venue for the conspiracy charge.

---

1. In a separate published opinion filed concurrently herewith we address a Speedy Trial Act claim of Paluch's co-defendant Beau Lee Lewis. Paluch raises claims of his own and also expressly adopts Lewis's briefs. By failing to move for dismissal on the basis of the Speedy Trial Act before the district court, however, Paluch has waived his right to raise that issue on appeal. 18 U.S.C. § 3162(a)(2). None of the other issues raised by Lewis is meritorious as to Paluch; we discuss in this disposition only the issues raised directly by Paluch.

Evidentiary Issues

■ Paluch challenges the admission of Morrison's statement that Beau Lewis had told him on May 2, 1997, about a proposed smuggling scheme that Lewis and Paluch had devised. A co-conspirator's statement is admissible against a defendant as an exception to the hearsay rule if the government proves by a preponderance of the evidence that the statement was made during the course of and in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2); *United States v. Bowman*, 215 F.3d 951, 960–61 (9th Cir.2000). That the conspiracy was in existence at the time the statement was made is supported by a taped conversation between Lewis and Morrison twelve days later, in which Lewis explained that Paluch at that time worked as a delivery driver and that "he thinks he can do it"; by recorded conversations between Lewis and Morrison throughout late May, in which Lewis continued to describe his and Paluch's ongoing efforts to enlist other Federal Express employees into the conspiracy; and by the fact that the smuggling was eventually conducted in a manner similar to that described in the hearsay. That the hearsay statement was in furtherance of the conspiracy is supported by the fact that the statement was a description of the modus operandi of the eventual criminal activity to someone the speaker believed to be his co-conspirator. The district court did not err in admitting the statement.

■ Paluch also challenges the admission of Jeffrey Bevan's statement that Paluch had attempted to enlist him in the conspiracy. A statement is not hearsay if the declarant testifies at trial and the statement is consistent with his testimony and used to rebut a charge of recent fabrication, improper influence, or motive. Fed.R.Evid. 801(d)(1). Bevan testified at trial, Paluch attempted to impeach his testimony through prior inconsistent statements, and the challenged statement was consistent with Bevan's trial testimony. Bevan's statement was therefore admissible.

Conviction

■ Paluch argues that his conviction of felony conspiracy in violation of 18 U.S.C. § 371 was not based on sufficient evidence. A conviction is supported by sufficient evidence if, in viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Alonso*, 48 F.3d 1536, 1543 (9th Cir.1995). The elements of conspiracy are 1) an agreement to accomplish an illegal objective, 2) along with one or more acts in furtherance of that objective, and 3) the intent necessary to commit the underlying substantive offense. *Id.* There is ample evidence that Paluch agreed with Lewis to accomplish an illegal objective, including the testimony of three of his coworkers at Federal Express that he tried to bribe them to divert packages; co-conspirator Jeffrey Miller's testimony that Lewis told him that Paluch had diverted packages at Federal Express; and Lewis's taped statement that he and Paluch devised the Federal Express smuggling system together. While some of the testimony against him was inconsistent, the inconsistency goes to the credibility of the witnesses and is unreviewable on appeal, *United States v. Burns*, 701 F.2d 840, 842 (9th Cir.1983). Moreover, although none of the witnesses actually accepted his bribes, the mere fact that his acts in furtherance of the conspiracy were unsuccessful does not relieve Paluch of liability. *See United States v. Lim*, 984 F.2d 331, 336 (9th Cir.1993) (unsuccessful attempts to conceal conspiracy were in furtherance of it).

■ Paluch argues similarly that there was insufficient evidence to convict him of smuggling in violation of 18 U.S.C. § 545. The elements of a violation of the smuggling law are "(1) defendant fraudulently or knowingly, (2) imported or brought into the United States, (3) any merchandise, (4) contrary to law." *United States v. Patel,* 762 F.2d 784, 790 (9th Cir.1985); *see* 18 U.S.C. § 545. Paluch contends that there is insufficient evidence that he participated in the three illegal shipments for which he was convicted under § 545. However, a co-conspirator is liable for the substantive offenses in furtherance of the conspiracy, even if he did not personally participate in them. *United States v. Miranda–Uriarte,* 649 F.2d 1345, 1353 (9th Cir.1981). Because the jury had sufficient evidence to find Paluch guilty of conspiracy, and because there is sufficient evidence to conclude beyond a reasonable doubt that all six of the shipments were part of the same conspiracy, Paluch was properly convicted of the underlying smuggling offenses. Furthermore, there is evidence linking Paluch to these shipments, including Luebking's testimony and that of Jeffrey and Mona Bevan.

■ Paluch also argues that the general smuggling law is inapplicable to the acts for which he was convicted because Congress has separately criminalized this conduct as a misdemeanor under the Endangered Species Act ("ESA"). *See* 16 U.S.C. § 1538(c)(1) ("It is unlawful for any person subject to the jurisdiction of the United States to engage in any trade in any specimens contrary to the provisions of the Convention, or to possess any specimens traded contrary to the provisions of the Conventions...."). As Paluch is aware, we rejected essentially the same argument in *United States v. Lee,* 937 F.2d 1388, 1397 (9th Cir.1991) (holding existence of Lacey Act misdemeanor penalty for the unlawful importation of wildlife does not remove wildlife from the scope of the general smuggling statute); *see id.* ("We conclude that Congress desired that section 545 continue to apply to unlawful importations of fish and wildlife."); *see also United States v. Batchelder,* 442 U.S. 114, 123–24, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (holding that "when an act violates more than one criminal statute, the Government may prosecute under either...."). Paluch offers no reason–nor are we aware of any– that we should apply a different analysis in this case.

■ Finally, Paluch contends that the conspiracy verdict against him was ambiguous as to whether he was convicted of misdemeanor conspiracy or felony conspiracy. The jury, however, expressed in a special verdict sheet a finding that the conspiracy encompassed objectives that were felonies, as well as objectives that were misdemeanors. Furthermore, because Paluch and his co-defendant were convicted of the same felony in connection with the same shipment, the conspiracy necessarily encompassed the commission of a felony in which they both participated.

Sentencing

■ First, Paluch argues that the district court erred in finding that the offense "was committed for pecuniary gain or otherwise involved a commercial purpose," U.S.S.G. § 2Q2.1(b)(1), because there is no evidence that he was paid for his participation in the conspiracy or that he had a financial motive. There is, however, abundant evidence that Lewis, who regularly sold reptiles for profit, engaged in the conspiracy for commercial purpose, and that the goal of the conspiracy was to obtain reptiles to sell. Furthermore, there was testimony that Paluch referred to the reptiles as "commodities," he admitted to having sold reptiles in the past, and he

attempted to persuade his coworkers to join the conspiracy by offering them cash payments. Neither is there evidence that Paluch was operating with any other purpose in mind.

■ Second, Paluch contends that the district court erred in finding that the wildlife "created a significant risk of infestation or disease transmission potentially harmful to humans, fish, wildlife, or plants ..." U.S.S.G. § 2Q2.1(b)(2). Paluch argues that an increase on that basis is not warranted because there is no evidence that the particular animals he imported were diseased. However, as Paluch recognizes, we have held that the increase is justified where the offender violated a wildlife regulation designed to protect public health, regardless of whether the particular animals with which the offender was involved were infected with any disease. *United States v. Narte*, 197 F.3d 959, 963–64 (9th Cir.1999) (adopting reasoning of *United States v. Eyoum*, 84 F.3d 1004 (7th Cir.1996)).

■ Third, Paluch challenges the district court's adjustment upwards based on a finding that the value of the wildlife was $90,800, under U.S.S.G. § 2Q2.1(b)(3)(A) ("If the market value of the fish, wildlife, or plants (i) exceeded $2,000 but did not exceed $5,000, increase by 1 level; or (ii) exceeded $5,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.") and U.S.S.G. § 2B1.1 (stating that if the value of the wildlife exceeds $70,000 then eight levels are to be added.) Paluch argues that, because he did not commit the offense for pecuniary gain, the value of the wildlife should not be considered. However, nothing in the sentencing guideline supports Paluch's assertion that the value of the wildlife may be considered only if the offense was committed for pecuniary gain. Rather, the adjustments for pecuniary gain and market value are separate, discrete portions of the Guidelines. *Compare* U.S.S.G. § 2Q2.1(b)(3)(A) (market value) *with* § 2Q2.1(b)(2) (pecuniary gain).

■ Paluch also argues that the district court erred by including with the market value of the wildlife for purposes of Paluch's sentence all the animals in all six of the illegal shipments although Paluch was charged for the substantive offense in connection with only three of those shipments. However, for a shipment to be considered, it must only have been both reasonably foreseeable to Paluch and committed in furtherance of the joint criminal activity. *United States v. Whitecotton*, 142 F.3d 1194, 1199 (9th Cir.1998). Actual knowledge of a coconspirator's actions is not required. *See United States v. Garcia*, 909 F.2d 1346, 1350 (9th Cir.1990). In light of Paluch's involvement in the planning and execution of the shipments for which he was convicted, the district court did not clearly err in finding that the other shipments were reasonably foreseeable to him.

■ Fourth, Paluch contends that adjusting his sentence both because the offense was committed for pecuniary gain and based on the market value of the wildlife constitutes impermissible double counting. However, no double counting occurs when the sentencing provisions in question account for different aspects of the defendant's conduct. *United States v. Haggard*, 41 F.3d 1320, 1327 (9th Cir. 1994). The sentencing adjustment based on commercial purpose is applied based on the motive for the offense, while the adjustment based on market value is designed to account for the magnitude of the harm the defendant caused. There was therefore no double counting.

■ Finally, Paluch believes that the district court erred in failing to apply a downward adjustment because his involvement in the scheme was less than that of

his co-conspirators. He argues that he was at most a "minor participant" in the conspiracy, and that because the conspiracy was so poorly executed and his ability effectively to smuggle so limited, he should be sentenced only as a "minimal participant." *See* U.S.S.G. § 3B1.2. An adjustment because the defendant's participation was "minimal" or "minor" requires that he be "substantially less culpable than the average participant," U.S.S.G. § 3B1.2, Comment 3(a). The relevant comparison is the scope of the defendant's participation in relation to that of his co-conspirators. *United States v. Benitez,* 34 F.3d 1489, 1498 (9th Cir.1994). Although Paluch was charged and convicted for the substantive offense in connection with only three of the illegal shipments and there was some evidence suggesting that he was unaware of some other illegal shipments, the scheme to ship wildlife via Federal Express was at least in part dependant on Paluch's role as a Federal Express employee. In furtherance of the conspiracy, Paluch picked up at least one package, and he attempted to recruit three other people for the conspiracy. Although Paluch may have been less culpable than Lewis, who orchestrated the scheme, he was more culpable than other co-conspirators, one of whom, for example, merely picked up one package. The district court did not clearly err in finding that Paluch was not substantially less culpable than the average participant.

Conclusion

For the foregoing reasons the conviction and sentence are AFFIRMED.

* This panel unanimously finds this case suitable for decision without oral argument.